365 So.2d 1319 (1978)
STATE of Louisiana
v.
Willie Joseph MARSE, Jr.
No. 62193.
Supreme Court of Louisiana.
December 15, 1978.
Rehearing Denied January 26, 1979.
*1320 Mary Coffman, Student Practitioner, William J. O'Hara, III, Supervising Atty., Loyola Law School Clinic, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., P. Michael Cullen, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
DENNIS, Justice.
If one reasonable view of the evidence in a first degree murder prosecution would support a finding of negligent homicide by the jury, does the statutory exclusion of "guilty of negligent homicide" from the list of responsive verdicts violate the defendant's constitutional rights to a fair trial by jury? Does the trial judge's refusal to instruct the jury on negligent homicide in such a case violate defendant's statutory right to a wholly correct and pertinent special charge? We conclude that negligent homicide constitutionally may be excluded by statute as a responsive verdict to first degree murder. Under the circumstances stated above, the trial judge should give the requested special charge on negligent homicide, but under the facts of the instant case the error was not reversible.
Defendant, Willie Marse, was tried upon an indictment of first degree murder of a police officer and convicted by a twelve person jury of the lesser included offense of manslaughter, La.R.S. 14:31. After being sentenced to twenty-one years imprisonment at hard labor, Marse appealed arguing three assignments of error relating to the trial judge's omissions in failing to either instruct the jury on negligent homicide or to include it in the list of responsive verdicts given the jury. Eight other assignments were not argued and are pretermitted.
About noon on July 12, 1977, after having a number of beers, defendant went to the *1321 Westwego home of his estranged girlfriend Ola Mayeux. Mayeux was just returning from the grocery store when defendant arrived. She dropped her groceries in fright, ran into the house and locked the door. Defendant picked up her groceries and took them to his house in Bridge City. Mayeux reported the incident to the Westwego Police.
Because Marse lived outside Westwego police jurisdiction, the officers requested that Jefferson Parish Sheriff's deputies meet them at the defendant's house. At first, when the Westwego officers questioned defendant, he simply refused to discuss the matter with them; but when a Jefferson Parish deputy arrived, defendant retreated into the building, warning that he was going to get a gun and shoot them. The deputy summoned his supervisor, Sergeant Merlin Brune. When he arrived Brune and the other officers entreated defendant through the closed door to cooperate with them. Marse again threatened to shoot if they did not leave the premises. Brune armed himself with a shotgun and resumed his station outside defendant's front door, where the solicitation of defendant continued for several minutes.
One account of the events immediately surrounding the fatal shooting was provided by police officers and partially corroborated by a lay witness. The officers testified as follows: As four policemen clustered about defendant's door, he cracked it open an inch or two, and one of the officers, seeing that defendant was armed with a rifle, lunged at the door in an effort to disarm him. However, the patrolman's fist crashed through a panel of the door as defendant slammed it shut. When the officer withdrew his hand from the hole, it was followed by the barrel of Marse's rifle. Brune commanded the defendant to drop the weapon. The barrel fanned the air momentarily, several shots rang out, and Merlin Brune was fatally wounded by one of the bullets. The officers returned defendant's fire without harming him. Marse finally surrendered without further bloodshed on either side.
In giving his version, defendant testified as follows: After the police refused his request that they leave, he warned them that he would shoot if they broke into his home. When the officer's fist came through the door, he was several feet away. It sounded like a shotgun blast. In his fright, he moved to the door and fired through the hole. He denied having taken aim: "I wasn't trying to hit nobody. I was just trying to scare them away from there." Defendant claimed that he was not even aware that Brune had been shot until he surrendered himself an hour after the incident. Marse's attorney testified that when defendant consulted him after the shooting and reported an exchange of gunfire with police officers he claimed that no one was injured.
Two of defendant's neighbors testified for the defense that from their different vantage points some distance away, they did not see defendant open the door before the officer broke into it and the shots erupted. Neither witness could tell who had fired the first shot.
On rebuttal, the State offered evidence that a month before the crime a disturbance with Ola Mayeux resulted in defendant's arrest. On that occasion he resisted arrest, voiced his hatred for police officers and repeatedly expressed a determination to kill them. On the day before the crime, an acquaintance testified, defendant declared that "he was gonna have to kill some of them [policemen] to make them leave him alone."

Procedural Context
The responsive verdicts to first degree murder are:
"Guilty.
"Guilty of second degree murder.
"Guilty of manslaughter.
"Not guilty." La.C.Cr.P. art. 814.
Contending that "guilty of negligent homicide" was logically and constitutionally, if not statutorily, responsive to the charge, defense counsel timely requested several special instructions to the jury on *1322 the law of negligent homicide. First, he asked that the court, when charging the jury as to the responsive verdicts in the case, specifically advise that "negligent homicide is not a responsive verdict." That charge was accepted by the court and given. Next, he requested the following instruction on criminal negligence, taken directly from La.R.S. 14:12:
"Criminal negligence under Louisiana law exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances."
Finally, he asked that the jury be charged as follows:
"While negligent homicide is classified under Louisiana law as a grade of criminal homicide, it is not a responsive verdict to this indictment under Article 814 of the Louisiana Code of Criminal Procedure. Therefore, I charge you that if you the jury conclude that the defendant's conduct amounts to no more than criminal negligence as previously defined, you must acquit the defendant."
The trial judge's refusal of the latter two charges is the basis of defendant's second argument on appeal. Defense counsel asserts in brief that the judge explained in chambers that his ruling was grounded upon Article 814's exclusion of negligent homicide as a responsive verdict. Thereafter, defense counsel moved to quash the indictment on the ground that Article 814 did not include guilty of negligent homicide among the responsive verdicts. The motion was denied and defendant contends in his first appellate argument that the ruling was erroneous.

Failure to Include Negligent Homicide as a Responsive Verdict
The wisdom of the Louisiana responsive verdict systemboth as to those verdicts included and those excludedhas been questioned. See, Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). However, this Court has repeatedly upheld Article 814 against constitutional attacks. See, State v. Qualls, 353 So.2d 978 (La.1977); State v. Cook, 345 So.2d 29 (La. 1977); State v. Palmer, 344 So.2d 964 (La. 1977). In cases not involving the death penalty, the element of capriciousness injected into the proceedings by the responsive verdict system does not offend the constitutional safeguards. See, State v. Palmer, supra.
In this case, defendant was charged by an offense punishable under a valid statute. See, La.C.Cr.P. art. 532; compare, State v. Legendre, 362 So.2d 570 (La.1978). By his motion to quash he did not challenge the validity of the charge, as constituted, but rather complained that the unavailability of a specific verdict in response to that charge prejudiced his defense. However, such a contention invites the trial court to pass upon the merits of the state's case, a matter not properly raised by motion to quash. Cf. State v. Atkins, 360 So.2d 1341 (La.1978). Defendant's ultimate protection is that if the state fails to prove the elements of the offense charged or of those offenses for which responsive verdicts are prescribed by La.C.Cr.P. art. 814, he is entitled to an acquittal.
The motion to quash was properly denied.

Failure to Instruct Jury on Negligent Homicide
By two of his assignments of error defendant contends that the trial judge erred in refusing his special requested instructions relative to the law of negligent homicide and to the jury's duty to acquit if it found that defendant had committed that crime. He asserts that the trial judge was required to give the instructions because they were wholly correct and pertinent.
La.C.Cr.P. art. 807, in relevant part, provides:
"A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent.

*1323 It need not be given if it is included in the general charge or in another special charge to be given."
See also, State v. Atkins, supra.
The State argues that the law of negligent homicide was not pertinent because that offense was not included among the applicable responsive verdicts.
Although we have previously considered the issue, thus far it has not been clearly decided. In affirming a conviction of manslaughter, after a trial upon a murder indictment, in State v. Hopper, 251 La. 77, 203 So.2d 222 (1967) this Court stated that the trial judge was not required to instruct on the law of negligent homicide and criminal negligence because negligent homicide was not a responsive verdict under the indictment. However, the opinion in the case, which involved a homicide resulting from a barroom fight, does not indicate that there was any evidence which would have supported a finding of negligent homicide. On the other hand, in State v. Mart, 352 So.2d 678 (La.1977), after reversing a second degree murder conviction on other grounds, we stated that on retrial an instruction on negligent homicide should be given. Although there was ample evidence of negligent homicide, the opinion does not clearly indicate that a failure to so instruct necessarily would amount to reversible error.
It is the duty of the trial judge to give a requested charge, which does not require qualification, limitation, or explanation and is not included in the general charge or another special charge, if it is wholly correct and pertinent to the case. La.C.Cr.P. art. 807. State v. Youngblood, 235 La. 1087, 106 So.2d 689 (1958); State v. Turner, 228 La. 202, 81 So.2d 861 (1955). This is a corollary of the trial judge's basic obligation to charge the jury as to the law applicable to the case, under which he is required to cover every phase of the case supported by the evidence whether or not accepted by him as true. La.C.Cr.P. art. 802; State v. Miller, 338 So.2d 678 (La. 1976); State v. Robichaux, 165 La. 497, 115 So. 728 (1928). It follows from these rules that the trial judge is required to charge the jury, in response to an otherwise proper request, as to the law applicable to any theory of defense which a jury could reasonably infer from the evidence.
For example, this Court has reversed a conviction of embezzlement because of the "clear prejudice and injury" caused by the trial judge's refusal to give a correct special charge, not otherwise covered, when requested by defendant on the law pertaining to an accessory after the fact despite there being evidence to show that defendant was merely an accessory after the fact. State v. Robichaux, supra. In State v. Miller, supra, this Court reversed an attempted manslaughter conviction because the trial court failed to instruct on the law of justification and self defense, even though raised only by defendant's "extremely doubtful" version of the shooting. Similarly, evidence of extensive pre-crime drinking by an accused, from which the jury might have inferred his intoxication warranted the requested instructions that intoxication might preclude the specific intent required for the charged murder. State v. Mart, 352 So.2d 678 (La. 1977). See also, State v. Lentz, 306 So.2d 683 (La.1975) (charge relative to intoxication as affecting intent pertinent to simple burglary prosecution); State v. Montalbano, 257 La. 884, 244 So.2d 820 (1971) (instruction on self-defense pertinent to aggravated battery prosecution).
Applying these principles to the instant case, we conclude that the requested special charges were wholly correct and pertinent. There was copious evidence, consisting of the testimony by Marse, the police officers and bystanders, from which the jury could have inferred that Marse was guilty of negligent homicide but not manslaughter or murder. The requested charges did not require qualification, limitation or explanation and were not included in other charges to be given. The trial judge fell into error, therefore, in not complying with his duty imposed by the statute to give the wholly correct and pertinent instructions requested on negligent homicide.
*1324 We further conclude, however, that the errors do not warrant reversal of defendant's conviction and sentence. Although defense counsel's able arguments have persuasive powers, we cannot say that there has been a miscarriage of justice, prejudice to the substantial rights of the accused or a substantial violation of a constitutional or statutory right. La.C.Cr.P. art. 921. This is not a case in which the jury was improperly exposed to inadmissible evidence, improper courtroom conduct or erroneous jury instructions. Defendant's only claim to prejudice was the trial judge's failure to define the crime of negligent homicide and to instruct the jury that it must acquit in the event defendant's conduct amounted to no more than negligent homicide. Thus, the omission could have been prejudicial only if the jury had insufficient information to understand that if Marse was guilty only of negligent homicide it should find him not guilty of the charged offense. Cf. Henderson v. Kibbe, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977).
A review of the record convinces us that the jury was adequately informed of its duty in the event it found defendant guilty only of the uncharged crime. The trial judge instructed the jury that negligent homicide was not a responsive verdict and that it must find the defendant not guilty if it had a reasonable doubt as to all grades of the offense charged. During his closing argument defense counsel, without objection or contradiction, told the jury that it must acquit the defendant if he were found guilty of no more than negligent homicide.[*] The voir dire has not been transcribed for our review. However, remarks by defense counsel in closing argument indicate that he also discussed the jury's duty upon a finding of negligent homicide during voir dire of prospective jurors.
Although it would have been preferable and more impressive if the trial judge had given the requested charges to the jury, the other instructions given by the trial judge coupled with defense counsel's closing argument and voir dire discussion sufficiently informed the jury of its duty to acquit defendant if the evidence warranted only a finding of negligent homicide.
Accordingly, defendant's assignments of error are without reversible merit.
For the reasons assigned, the defendant's conviction and sentence are affirmed.
AFFIRMED.
SANDERS, C. J., and SUMMERS and MARCUS, JJ., concur.
DIXON, J., dissents with reasons.
DIXON, Justice (dissenting).
I respectfully dissent.
The description of the armed invasion of defendant's home by police to gain his "cooperation" and to question him (in spite of his constitutional right to keep silent) makes it difficult to understand the conclusion that the failure to give a relevant, correct and important charge was harmless error.
NOTES
[*] "I think Willie is guilty of negligence. I think he is guilty of criminal negligence. I think he acted in a reckless manner in disregard for peoples lives. If I had to tell you that's what Willie did wrong, yes, that's what Willie did wrong. But, you see, you can't find him guilty of that. But if you do conclude that the most you can say about Willie was that he acted grossly negligent in disregard for others, you see, if you find that, but if you find no more than that, if that's all you find that Willie did, then I suggest to you that that's the most he did. Then, you see, you have to find him not guilty, because negligent homicide is not a responsive verdict."