SEXTON, Judge.
The defendant, Johnny L. Johnson, was charged with the crime of manslaughter in violation of LSA-R.S. 14:31, while armed with a firearm, in violation of LSA-R.S. 14:95.2. The defendant was subsequently convicted in a jury trial and sentenced to five years at hard labor without parole, probation or suspension of sentence plus an additional two years without benefit of probation, parole or suspension of sentence pursuant to LSA-R.S. 14:31 and 14:95.2. Defendant now appeals his conviction and sentence asserting twelve assignments of error which he contends warrant the reversal of the conviction and sentence. Finding no merit to any of defendant’s contentions, we affirm the conviction and sentence.
FACTS
Patty Johnson, wife of the defendant, visited the home of Joyce Glenn on October 20, 1985. James Ray Jenkins, who cohabited with Ms. Glenn, engaged in a heated argument with Patty Johnson and pushing and shoving ensued. In an effort to protect herself, Mrs. Johnson obtained a chair. She eventually left the house and acquired the tire iron from her car. No further physical contact transpired between the parties, but the verbal altercation continued. As Mr. Jenkins continued to threaten Mrs. Johnson telling her to return with her husband, she simultaneously managed to exit the premises with her two children. Although the exact words used by Mr. Jenkins are not clear, they were construed by Mrs. Johnson as suggestions that Mr. Jenkins possessed a gun. Mrs. Johnson returned home and informed her husband, the defendant, of what had taken place. She and her husband thereafter returned to the Glenn residence in separate cars, with Mrs. Johnson in the lead, in order for Jenkins and defendant to “talk.” Mr. Johnson possessed a loaded shotgun “just in case.” As the two arrived at the Glenn residence, Mr. Johnson sounded his horn and called to Jenkins to exit his house. Jenkins had earlier backed his car into the driveway and opened the trunk. As Jenkins exited the house, he walked toward the open trunk. The defendant had at that time placed his shotgun on the trunk of his car and as Jenkins made a movement toward the open trunk and began to open it further, the defendant yelled at him requesting Jenkins not to enter the trunk. The defendant yelled several times, but Jenkins continued his course of action. The defendant obtained his gun and shot Jenkins.
DEFINITION OF A “FIREARM”
ASSIGNMENTS OF ERROR 1, 4, 5 and 11
Assignments of Error 1, 4, 5 and 11 deal with the definition of “firearm” in the context of a denial of a motion to quash, the refusal to give certain jury instructions on the subject and the testimony of an expert witness. We first discuss Assignment of Error Number 11 as it deals specifically with the issue of the definition of a firearm as contemplated by LSA-R.S. 14:95.2.
Defendant asserts in Assignment of Error Number 11 that the trial court erred in denying his motion to quash that portion of the indictment charging him with the commission of a crime while armed with a firearm as he asserts that the instrumentality used in the commission of this crime does not fit within the statutory definition of a firearm.
Defendant argues that LSA-R.S. 40:1781 provides the relevant definition of “firearm” and urges that this definition applies to LSA-R.S. 14:95.2 and LSA-C. Cr.P. Art. 893.1, the firearm enhancement statutes.
LSA-R.S. 40:1781(3) provides as follows:
§ 1781. Definitions
For the purpose of this Part, the following terms have the meanings ascribed to them in this Section:
(3) “Firearm” means a shotgun having a barrel of less than eighteen inches in length; a rifle having a barrel of less than sixteen inches in length; any weapon made from either a rifle or a shotgun if said weapon has been modified to have *687 an overall length of less than twenty-six inches; any other firearm, pistol, revolver or shotgun from which the serial number or mark of identification has been obliterated, from which a shot is discharged by an explosive, if that weapon is capable of being concealed on the person; or a machine gun or gas grenade; and includes a muffler or silencer for any firearm, whether or not the firearm is included within this definition. Pistols and revolvers and those rifles and shotguns which have not previously been defined in this Paragraph as firearms from which several numbers or marks of identification have not been obliterated are specifically exempt from this definition.
Defendant asserts that as this is the only statutory definition of a “firearm” in our law, it therefore follows that this definition should have applied for purposes of LSA-R.S. 14:95.2 and LSA-C.Cr.P. Art. 893.1. We disagree.
Title 40 is a collection of legislative enactments dealing with public health and safety. Specifically, Section 1781 containing defendant’s definition is included in the chapter of that title dealing with the registration of weapons. Section 1781 limits the definitions enumerated under its provisions to the specific part and section dealing with the registration of certain specified weapons. The limited definition of a firearm set forth in Title 40 was not intended as a broad definition to be extended to other aspects of our criminal law.
Defendant’s secondary contention with respect to the issue of the definition of a firearm is represented by Assignments of Error 4 and 5 which contend that the trial court erred by failing to instruct the jury with respect to the definition of a firearm contained in Title 40 (requested defense charge number 1) and by failing to instruct the jury that a presumption exists that the legislature acted with knowledge of this definition when LSA-C.Cr.P. Art. 893.1 and LSA-R.S. 14:95.2 were enacted (requested defense charge number 2).
Our determination that the definition of firearm set forth in LSA-R.S. 40:1781(3) is pertinent only to Title 40 is obviously fatal to defendant’s contention of error with respect to these two requested charges.
Defendant’s final contention regarding the definition of a “firearm” is presented by Assignment of Error Number 1. In that assignment, he contends that the trial court erred when it allowed the state’s expert to give his expert opinion concerning the definition of a firearm. His objection is two-fold. First, the defendant claims that expert testimony is to be confined to matters requiring special skills or knowledge and which is not within the knowledge or understanding of mankind in general, and that expert testimony is not to be admitted when the triers of fact are just as competent to draw inferences from the facts as is the witness.
In the instant case, the defendant was specifically charged under LSA-R.S. 14:95.2 with committing the offense at issue with a firearm. Our Supreme Court has held that if the state intends to invoke this statute the defendant must be specifically so charged. State v. Jackson, 480 So.2d 263 (La.1985). Therefore, the state has the obligation to prove that the offense was committed with a firearm and the finder of fact is required to make a finding in that regard before the provisions of LSA-R.S. 14:95.2 may be invoked. We thus perceive no distinction in the state’s obligation to prove the existence of a firearm in this circumstance and the state’s obligation to prove the existence of dangerous drugs when a defendant is charged with possessing or distributing same. In either case, the state must prove the existence of the thing.
In the instant case, the state’s expert was a qualified expert in the identification of firearms. He testified that a firearm was an assembly of a barrel and firing mechanism from which a projectile or projectiles are propelled by products of combustion. He further identified the item at issue in the instant case as a shotgun — a “smooth bore firearm which is designed to fire shot shells containing numerous pellets.” He thus opined that the item was a working firearm.
*688 Considering the state’s burden, we not only perceive no error in the introduction of the aforesaid expert testimony, but believe the state was mandated to prove that the item used was indeed a firearm in order to obtain the use of LSA-R.S. 14:95.-2.
Defendant’s second contention is that when the trial court allowed the expert to testify as to the definition of a firearm, it thereby allowed him to testify as to an ultimate issue of fact and thus invaded the province of the jury. He asserts that an expert must not take the place of a jury by expressing his opinion as to an ultimate issue of fact, although the jury is entitled to the aid of experts in determining the existence and non-existence of facts not within common knowledge.
Clearly, the jurisprudence of this state as well as this Circuit holds that while a jury is entitled to the aid of experts in determining the existence of facts not within the common knowledge of the jury, an expert must not take the place of a jury by expressing his opinion as to an ultimate fact. State v. White, 450 So.2d 648 (La.1984); State v. Wheeler, 416 So.2d 78 (La.1982); State v. Nelson, 306 So.2d 745 (La.1975); State v. Coleman, 486 So.2d 995 (La.App. 2d Cir.1986), writ denied 493 So.2d 634 (La. 1986); State v. Beck, 445 So.2d 470 (La. App. 2d Cir.1984), writ denied 446 So.2d 315 (La.1984).
The question of whether an expert’s opinion is directed to an ultimate fact that invades the province of a jury or whether it is appropriate to the circumstances of the case is a troubling one. There is a recent trend throughout the United States to allow expert opinion on an ultimate fact and leave to the jury the question of whether to accept that opinion. 31 Am.Jur.2d Expert and Opinion Evidence § 22 (1986). Louisiana has, however, maintained the more conservative view and declined to accept the admissibility of opinion evidence dealing with an ultimate issue of fact. State v. Wheeler, supra.
At first glance it does not appear that the question of whether the item at issue was a firearm is one of ultimate fact because the issue for the jury is the more all-encompassing question of whether the defendant used a firearm to commit the instant offense. However, our determination that the state was obligated to prove that the item at issue was a firearm obviates the need for further discussion of this difficult area of the law.
In other words, the state was mandated to charge the use of a firearm in the commission of this offense in order to avail itself of LSA-R.S. 14:95.2. It was thus logically obligated to prove that an instrumentality involved therein was a firearm. In an effort to do so, it offered the testimony of a person who was qualified as an expert witness in the identification of firearms. Under these circumstances, the introduction of such testimony cannot be said to be erroneous.
These assignments of error lack merit.
SUFFICIENCY OF EVIDENCE
ASSIGNMENTS OF ERROR 2 and 9
By separate vehicles, these assignments attack the sufficiency of the state’s evidence to convict the defendant. Assignment of Error Number 2, which is not seriously argued, complains that the trial judge committed error in not granting the defendant’s motion for acquittal at the close of the state’s case. However, LSA-C.Cr.P. Art. 778, by its very wording, limits such a motion to judge only trials. The motion is not available in a jury trial. State v. Smith, 430 So.2d 31 (La.1983).
We thus proceed to defendant’s Assignment of Error Number 9 complaining that the trial judge erred in failing to grant a post-verdict judgment of acquittal.[1]
*689 Specifically, defendant claims that the state failed to disprove that the instant homicide was committed in self-defense.
The test incorporated as the standard of review of a motion for judgment of acquittal requires that the evidence be viewed in the light most favorable to the state. LSA-C.Cr.P. Art. 821. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). As the defendant submits, the burden of proof falls upon the state in a homicide prosecution to prove beyond a reasonable doubt that the defendant did not act in self-defense. State v. Jackson, 419 So.2d 425 (La.1981). However, a person who is the aggressor or who brings upon a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. LSA-C.Cr.P. Art. 21. State v. Simmons, 414 So.2d 705 (La.1982.)
The testimony in this case clearly reveals that the defendant shot the victim. He testified as to this fact as well as did his wife and the victim’s girlfriend. Defendant, however, asserts that this act was done in self-defense as he feared that the victim was obtaining a gun from the trunk of his car.
Indeed, the record reveals that threats were made by the victim to the defendant’s wife in an effort to scare her. The exact content of the threats is, however, not clearly disclosed by the record. What is clear, however, is that the victim and defendant’s wife engaged in a heated discussion wherein physical contact and shouting took place. It is likewise clear that the defendant’s wife left the victim’s premises and traveled to her home, some ten minutes away. At this point, the defendant, when hearing of the altercation armed himself with a gun and sought out the victim.
Although he may have feared that the victim might obtain a gun from his trunk, this fear was brought about solely by the direct action of the defendant. The original conflict between the victim and the defendant’s wife had ended. The defendant initiated the circumstances leading to the victim’s demise by proceeding to the victim’s residence and displaying a weapon.
Under such circumstances, it would appear that the instant defendant is an aggressor who cannot claim the right of self-defense in accordance with LSA-R.S. 14:21.[2] See also State v. Simmons, supra. In any event, the circumstances are such that when viewed in the light most favorable to the prosecution, we cannot say that the evidence is insufficient to prove that the defendant did not act in self-defense. These assignments of error lack merit.
SPECIALLY REQUESTED CHARGES
ASSIGNMENTS OF ERROR 6 and 7
Defendant argues by these assignments of error that the trial judge erred in failing to give defendant’s requested jury charges 5 and 6. Charge number 5 requested an instruction on the definition of criminal negligence taken directly from LSA-R.S. 14:12. Charge number 6 requested that the jury be informed that negligent homicide is a grade of criminal homicide in Louisiana but is not responsive to the instant charge. Charge number 6 further requested that the jury be informed that if it concluded the defendant's conduct amounted to no more than criminal negligence, the jury was obligated to acquit the defendant.
In seeking these two charges, the defense cited State v. Marse, 365 So.2d 1319 (La.1978), in which a three judge plurality determined that the failure to give these very same charges in that negligent homi *690 cide prosecution was error. The court further concluded in State v. Marse, however, that the error in the failure to give the charge did not warrant reversal because no substantial violation of the rights of the accused or prejudice to the accused had been shown, and it declined to reverse under the authority of LSA-C.Cr.P. Art. 921.[3]
While Marse contained a discussion of the question of whether these correct charges with respect to criminal negligence and negligent homicide were required in every homicide prosecution, our reading of the plurality opinion is that it did not specifically so decide. Marse made the more narrow holding that under the evidence existing in that case — because the jury could have determined that Marse was guilty of negligent homicide rather than manslaughter or murder — the failure to render the instructions also at issue in the instant case was error.
However, the court failed to find that the omission of the charges amounted to prejudice. The Marse court stated that the omission of the charges is only prejudicial if the jury had insufficient information to understand that if it determined that the defendant Marse was guilty of negligent homicide, that it must find him not guilty of the charged offense. Thus, determining that the jury was adequately so informed, the Marse court found no prejudice.
In the instant case, our view is that there are no elements of negligence involved, particularly since the defendant’s main evi-dentiary assertion is that the state failed to carry its burden with respect to self-defense. However, we need not reach the more difficult evidentiary question because we are of a view in this case, just as in Marse, that the jury was made sufficiently aware that if it determined the homicide resulted from negligence, then the defendant was not guilty of the offense charged. The instant trial court instructed the jury that the offense at issue was an intentional crime, that certain offenses occurred merely as a result of criminal negligence, but that the offense at issue was an intentional one.
While the instructions sought were an accurate statement of the law and would have rendered the trial court’s charge on the subject more easily understood, under the circumstances of the charge given, we are unable to perceive prejudice. Moreover, defendant’s argument points to no prejudice and is simply that “the court was bound to charge the jury concerning negligent homicide, which it refused to do.” Thus, this assignment of error lacks merit, as do the others in this category.
THE SENTENCE
ASSIGNMENT OF ERROR 10
Defendant argues by this assignment that his seven year prison term without benefit of parole, probation or suspension of sentence or good time is excessive under the circumstances of this case.
Appellant does not complain that the trial court failed to articulate LSA-C.Cr.P. Art. 894.1 guidelines. He basically argues the unfairness of the seven year sentence imposed and asserts that a worst felony offender who receives a sentence of twenty-one years is eligible for parole after seven years, the length of time that the defendant in this case is required to serve.
It is true that LSA-C.Cr.P. Art. 893.1 mandates a minimum sentence of five years because of the use of the firearm and provides that the defendant is not eligible for probation or parole. LSA-R.S. 14:95.2 further mandates a two year term in addition to the minimum five year term required by LSA-C.Cr.P. Art. 893.1 because the defendant has been convicted of manslaughter while using a firearm, and that two year term is also without benefit of parole, probation or suspension of sentence. In addition, no credit for good time is available under this two year sentence. Thus, defendant’s point is not entirely accu *691 rate because he is eligible for good time on the five year portion on the sentence imposed under LSA-C.Cr.P. Art. 893.1.
However, defendant’s position is that he will have to serve substantially the same amount of time as the worst type of offender who receives the maximum sentence. Indeed, since good time is not available under LSA-R.S. 14:95.2, this defendant will be required to serve a substantial portion of the seven year sentence imposed.[4] However, defendant’s argument fails to take into account the fact that the worst type of offender who commits this offense with a firearm will likewise be similarly penalized by Articles 893.1 and 14:95.2.
More importantly, the sentence imposed on the instant defendant is the statutory minimum sentence which this defendant could receive on the instant bill of information and the jury verdict on that bill. Thus, this assignment of error lacks merit.
Assignments of Error 3, 8 and 12 were not argued in brief and are therefore considered abandoned. State v. Domingue, 298 So.2d 723 (La.1974).
The conviction and sentence of the defendant are affirmed.
AFFIRMED.

. In this assignment, the defendant also alternatively complains of the denial of a motion for new trial. Such a motion based on the assertion that the verdict is contrary to the law and evidence is limited to the question of whether the trial judge property exercised his wide discretion in reviewing the defendant's motion seeking a new trial on one of these specifically enumerated grounds of LSA-C.Cr.P. Art. 851. Thus, the defendant’s failure, as in the instant *689 case, to direct our attention to a specific abuse thereof is fatal to the defendant in that regard. State v. Turner, 365 So.2d 1352 (La. 1978).

. LSA-R.S. 14:21:
§ 21. Aggressor cannot claim self defense
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.

. LSA-C.Cr.P. Art. 921:
Art. 921. Matters not grounds for reversal A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused.

. A prisoner situated such as the instant defendant is entitled to fifteen days a month good time. LSA-R.S. 15:571.4 B. Thus, the defendant will have to serve essentially two-thirds of the five year sentence if his conduct warrants good time credit plus two years without benefit of good time under LSA-R.S. 14:95.2.