SCHOTT, Chief Judge.
Defendant was convicted of unauthorized entry of a place of business (R.S. 14:62.4) and simple escape (R.S. 14:110). On his motion to sever, the two counts were tried separately and he was convicted of both offenses. He was sentenced for the unauthorized entry as a Habitual Offender (R.S. 15:529.1) to twelve years and on the escape to five years. During the trial he was found guilty of contempt of court seven times and sentenced to seven consecutive six month sentences.
*554 An employee of an Exxon station in New Orleans heard noises in the back of the garage and called the police. They found a broken door on the building and looked inside where they saw defendant trying to hide. He ran through a plate glass window and was caught after a chase. Cut and bleeding, he was arrested, handcuffed and taken by the police to Charity Hospital where he was taken to the emergency room on a stretcher. At the request of the physician, the police took the handcuffs from behind him and put them in front. While a nurse was checking him, he jumped off the stretcher and ran. The two police officers chased after him, ordered him to stop and caught him after he tried to strike a hospital employee with the handcuffs and fell over some chairs.
Defendant’s counsel has assigned three errors and defendant has raised a number of pro se assignments.
By his first assignment through counsel, defendant argues that the court erred in denying a requested jury charge which would provide them with the elements of the offense of resisting arrest, R.S. 14:108, and charge them that if the evidence proved a violation of resisting arrest, they should acquit him of simple escape. The trial judge is required to charge the jury in response to a defense request as to the law applicable to a defense theory which a jury could reasonably infer from the evidence. State v. Marse, 365 So.2d 1319, 1323 (La.1978). Resisting arrest consists of opposition or resistance to an officer who is in the process of trying to arrest and restrain the defendant. When defendant fled from the emergency room he had already been arrested and restrained. The jury could not reasonably infer that he was guilty of resisting arrest instead of simple escape so that the trial judge properly declined to give the requested charge.
By his second assignment through counsel, defendant argues that the evidence was insufficient to prove beyond a reasonable doubt that he committed simple escape. R.S. 14:110 provides in pertinent part as follows:
A. Simple escape shall mean any of the following:
(1) The intentional departure, under circumstances wherein human life is not endangered of a person imprisoned, committed, or detained from a place where such person is legally confined, from a designated area of a place where such person is legally confined, or from the lawful custody of any law enforcement officer or officer of the Department of Public Safety and Corrections.
* * ⅝ * * ¡⅜
(3)A person imprisoned, committed, or detained who commits the crime of simple escape as defined in Paragraph A(l) of this Section shall be imprisoned with or without hard labor for not less than two years nor more than five years; provided that such sentence shall not run concurrently with any other sentence.
(A)(2) and (3) and (B)(1) and (2) of the statute have to do with persons in work release programs or furloughs and are therefore inapplicable to this case. The elements of the offense applicable to this case are (1) intentional departure (2) where human life is not endangered (3) of a person detained (4) from the lawful custody of an officer. Reviewing the evidence in the light most favorable to the prosecution, we have concluded that a rational jury could have found these elements proved beyond a reasonable doubt.
Defendant relies upon State v. Foster, 509 So.2d 47 (La.App. 1st Cir.1987), in support of this assignment. There the court reversed a conviction for simple escape where the defendant had been arrested for disturbing the peace in the courthouse and ran away while he was being escorted to jail by a deputy outside the courthouse. The court compared R.S. 14:110, simple escape, with R.S. 14:108, resisting arrest, and concluded that § 110 applies to persons who have been physically placed in a jail facility. The court reasoned that the terms “legally confined” and “lawful custody” in § 110(A)(1) must be interpreted in the light of § 110(D) which provides as follows:
*555 D. For the purposes of this Section, a person shall be deemed to be in the lawful custody of a law enforcement officer or of the Department of Public Safety and Correction and legally confined when he is in a rehabilitation unit, a work release program or any other program under the control of a law enforcement officer or the department.
We disagree with this interpretation of the statute. The obvious purpose of § 110(D) is to include within the scope of lawful custody and legal confinement one who is in a rehabilitation unit, or work release program. Such a person is usually free of immediate restraint. This section does not have the effect of generally modifying or explaining § 110(A)(1) and has nothing to do with the facts of this case. Nothing in § 110(A)(1) suggests that it applies only when the defendant has been placed in jail and has been convicted and sentenced.
The Foster court also erred in its interpretation and application of R.S. 14:108(B)(l)(b). § 108(A) defines the crime of resisting arrest to include the “obstruction of” an officer making a lawful arrest or serving a process or court order. § 108(B) provides as follows:
B. (1) The phrase “obstruction of” as used herein shall, in addition to its common meaning, signification, and connotation mean the following:
(a) Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.
(b) Any violence toward or any resistance or opposition to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail.
The Foster court interpreted (B)(1)(b) to provide that any resistance before the defendant is actually incarcerated constitutes resisting arrest. We disagree with this interpretation. (B)(1)(b) is intended simply to provide a meaning for “obstruction of” beyond its common meaning.
In any event, the instant case is distinguishable from Foster on its facts. Our defendant was detained and escaped from a place where he was legally confined, handcuffed, being guarded by and in the custody of two policemen, on a stretcher, in the emergency room of Charity Hospital.
By his third assignment through counsel, defendant contends that the court erred in sentencing him to three and one-half years for contempt of court to run consecutively to his other sentences. He argues that the court punished him seven times for what constituted a single act of contempt.
At the conclusion of the habitual offender hearing, the defendant stated to the judge, “F ... y ... ” The judge ordered him back before the bench and defendant repeated his filthy insult. The judge again ordered him back and made the statement for the record of what the defendant said twice to him. The defendant responded, “F... y.. a..h... At this point the judge found defendant in direct contempt and sentenced him to six months on each of the three. However, the judge also embarked upon a colloquy with defendant during which defendant repeated the same insult four more times and was found in contempt and sentenced to six more months for each. We can well understand and appreciate the righteous indignation and frustration of our brother judge over this outrageous conduct of the defendant. However, since the last three insults took place during the colloquy initiated by the judge and in circumstances where the judge was highly but understandably indignant with this defendant, we have resolved to reduce the sentence for contempt to six months on each of the first three, or eighteen months, to run consecutive to all other sentences.
Having considered all of counsel’s well briefed assignments, we turn to defendant’s pro se assignments. His argument 1 is the same as assignment 2 discussed above. By the second pro se assignment he complains that C.Cr.P. art. 705 was violated because the state failed to file separate bills of information after his motion to sever was granted. This article applies to severances for duplicity or misjoinder and of trials of jointly indicted defendants. Of *556 ficial Revision Comment (a) to C.Cr.P. art. 705. Defendant’s assertion that the jury was given the original bill containing both charges each time he was tried is not supported by the record. And while the record does not negate this unsupported assertion we presume that the trial court followed C.Cr.P. art. 765 and read the appropriate bill to each jury. If defendant wishes to pursue this point he may do so in post conviction relief proceedings, C.Cr.P. art. 924 et seq.. This assignment is meritless.
By pro se assignment 3, defendant complains that the bill of information was not filed until eight months after his arrest in violation of C.Cr.P. art. 701(B)(1). His previous remedy was to be released on bail while awaiting trial. Now that he has been tried, the issue is moot.
By his next two pro se assignments, defendant argues that he was denied effective assistance of counsel at trial and on appeal. This argument cannot be adequately or effectively addressed on the basis of the record before us and on this appeal. There is no reason or justification in this case to depart from the general rule that ineffective assistance of counsel should be raised by application for post conviction relief, C.Cr.P. art. 924 et seq., and not on appeal.
The final pro se assignments are addressed to the habitual offender proceedings. He first argues with respect to a 1980 conviction but this conviction was not used in the final adjudication. Although the original habitual offender bill referred to 1980 and 1986 convictions, a second bill referring only the 1986 conviction was filed and the adjudication referred only to 1986 conviction. Thus, defendant’s concern with the 1980 conviction is academic. Defendant also expresses concern that the trial court's failure to vacate the original six year sentence before sentencing him to twelve years as an habitual offender results in two sentences for the same offense. It is clear from the transcript that the court sentenced defendant to twelve years as a habitual offender on the unauthorized entry count. R.S. 15:529.1(D) requires the trial court to vacate the original sentence when the habitual offender sentence is imposed and the record does not reflect that this was done. Defendant’s argument on this point has merit.
Finally, defendant filed a second pro se brief in which he again raises assignments already discussed except this time he contends for the first time that he was entitled to a jury trial on the contempt charges because the sentence imposed exceeds six months. This argument is specious. C.Cr.P. art. 22 authorizes the judge to make a finding of direct contempt without a trial.
A review of the record for errors patent discloses none.
Accordingly, the conviction for unauthorized entry is affirmed. The original six year sentence for this offense is vacated. The twelve year sentence under the Habitual Offender Law is affirmed. The first three convictions and sentences for direct contempt of court are affirmed. The other four contempt convictions are reversed and set aside.
ORIGINAL SENTENCE VACATED; FOUR CONTEMPT FINDINGS REVERSED AND SET ASIDE; OTHERWISE AFFIRMED.
PER CURIAM.
On our motion we grant rehearing in order to correct our judgment of June 14, 1990.
In State v. Bullock, No. 88-K-2123, Unpub., March 30, 1989, another panel of the court affirmed defendant’s seven sentences for contempt having granted certio-rari on defendant’s pro se application. That judgment is final and has the quality of res judicata.
Consequently, the contempt citations and sentences were not properly before us and that portion of our June 14, 1990 judgment is erroneous.
Accordingly our judgment of June 14, 1990 is amended so that all seven contempt findings and sentences are affirmed. In all *557 other respects our judgment remains unchanged.