594 So.2d 1360 (1992)
STATE of Louisiana, Appellee,
v.
Tamala VERGO, Appellant.
No. 23049-KA.
Court of Appeal of Louisiana, Second Circuit.
January 22, 1992.
Rehearing Denied February 21, 1992.
Writ Denied May 15, 1992.
*1361 Wellborn Jack, Jr., Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., James Stewart and Catherine M. Estopinal, Asst. Dist. Attys., Shreveport, for appellee.
Before MARVIN, C.J., and NORRIS and BROWN, JJ.
MARVIN, Chief Judge.
After having allegedly triggered what became known as the Cedar Grove Riot in Shreveport in 1988, Tamala Vergo appeals her 1990 conviction by a jury of manslaughter. LRS 14:31. She complains that the trial court should not have granted the state's challenge for cause of two prospective jurors and that two of her requested special charges should have been given to the jury.
We affirm.

FACTS
About 9:45 p.m. on September 20, 1988, Cynthia Johnson and Tamala Vergo drove to a convenience store next to A.B. Palmer Park on Line Avenue in Shreveport, an area that was known for drug activity, to obtain cocaine. When Johnson stopped the automobile on the crowded parking lot, Vergo and Johnson asked the several black males who immediately approached the car whether they had any "rock" [crack cocaine] to sell.
One of the males, Lawrence Adams, handed Johnson a few gravel rocks he had apparently picked up from the parking lot. Another, Andre McDonald, gave a small package containing rock cocaine to Vergo to inspect. Johnson returned the gravel rocks Adams had given her and began backing the car. Someone in the crowd yelled that "she" (Vergo) had a gun. McDonald, reaching into the car, grabbed the package of rock cocaine he had given to Vergo and began to move away from the car. Vergo then pointed a pistol and fired *1362 two shots toward the males who began running toward the park.
One of the shots hit a fence post and the other fatally wounded William David McKinney, a young and distant bystander who was in the line of fire. An unknown person or persons in the park fired shots at the automobile, which then stalled. Both females ran from the vehicle and into the store, yelling for somebody to call the police. They hid the gun in the toilet in the restroom of the store where it was later found by the police. As a larger crowd assembled and emotionally reacted to the fatal shooting of McKinney, the police escorted the females to their squad car and away from the scene.

ABANDONED ASSIGNMENTS OF ERROR
Vergo concedes that the evidence was sufficient to convict under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This assignment and two others which were not briefed are deemed abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La. 1978); State v. Kotwitz, 549 So.2d 351 (La. App.2d Cir.1989), writ denied.

CHALLENGES FOR CAUSE
Vergo complains of the granting of the state's challenge for cause of prospective jurors Christopher S. Leonard and Betty M. Sherman.
The erroneous granting of a challenge for cause to a prospective juror is not reversible error unless the effect of the ruling is to allow the state more peremptory challenges than the law provides. CCrP Art. 800; State v. Labostrie, 358 So.2d 1243 (La.1978); State v. Edwards, 406 So.2d 1331 (La.1981), U.S. cert. denied. Vergo asserts that the trial court's ruling had the effect of allowing the prosecution extra peremptory challenges because the state exercised all 24 of its peremptory challenges.
A trial court has broad discretion to rule on challenges for cause. We do not disturb a ruling unless an abuse of discretion is demonstrated. State v. Sugar, 408 So.2d 1329 (La.1982). Discretion is abused when exercised arbitrarily and unreasonably and causes prejudice to the accused. State v. Knighton, 436 So.2d 1141 (La. 1983), U.S. cert. denied. State v. Broadway, 440 So.2d 828 (La.App.2d Cir.1983).
The state or the defendant may challenge a juror for cause on the ground that the juror is not impartial, whatever the cause of his partiality. CCrP Art. 797(2). A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to the law may be reasonably inferred. State v. Jones, 474 So.2d 919 (La.1985), U.S. cert. denied.
A juror may be challenged for cause on the ground that he will not accept the law as instructed by the court. CCrP Art. 797(4). A trial court does not abuse its discretion in excusing a juror for cause where the juror appeared convinced that the burden of proof was "beyond a shadow of a doubt" and was not inclined to accept the reasonable doubt standard as instructed by the court. State v. Hall, 549 So.2d 373 (La.App.2d Cir.1989), writ denied.
A trial court does not abuse its discretion in granting a challenge for cause where the juror stated that she would require the state to prove its case to an absolute certainty rather than beyond a reasonable doubt. State v. Brown, 504 So.2d 1025 (La.App. 1st Cir.1987), writ denied.
Vergo claims that Mr. Leonard and Ms. Sherman were excused for cause for expressing their view that Vergo was innocent, arguing that this view was
nothing more than the law required of them, that is, give her the full benefit of the presumption of innocence and hold the State to the heavy burden of proving her guilt beyond a reasonable doubt.
MR. LEONARD
During voir dire, Leonard stated that he is not an open minded person, and *1363 he believed that Vergo was innocent because "[he has] been in that store too late at night [and he knows] what goes on there." When asked if he could be a fair and impartial juror, Leonard responded, "Not really. I don't believe so." Leonard explained that he would be "lying" if he told the court that he could deal with the facts as presented to him in open court and erase his preconceived opinions based on the fact that he has been to the area where the killing occurred. He stated that the fact that he knew the area might keep him from being fair and impartial to the state and the defendants.
Leonard also said that the state would have to have "some very strong evidence," "a lot of evidence," "good evidence," to convince him that the females were guilty. Leonard stated that the state would have to go beyond its burden of proof, but later stated that he would not hold the state to a higher standard because of his personal beliefs.
The state based its challenge of Leonard on his partiality and refusal to accept the law as given to him by the court. Our review convinces us that the trial court did not abuse its discretion in excusing Leonard. Leonard's answers revealed his honest doubt about his ability to accept the law as given him by the court and to be impartial.

MRS. SHERMAN
Ms. Sherman stated that she had learned about the case by talking to people who lived in the Cedar Grove neighborhood and who attended meetings of the black-white task force that was appointed after the riot to quell post-riot racial tension. She repeatedly stated that she had made up her mind about the case, opining that Vergo's conduct was justified. She affirmatively answered that she had "already in one way had a mini-trial and decided they [Vergo and Johnson] are not guilty." She stated that she could listen to the evidence, but she believed that the homicide was justifiable. Ms. Sherman's statements that she could vote guilty, "if the evidence convinces [her] that what [she] heard is not the truth and that [Vergo] is really guilty, that [Vergo] was not justifiably shooting someone," do not reflect the overall tenor of her voir dire testimony and answers.
The state's challenge of Mrs. Sherman was based on her inability to be impartial and to accept the law as given to her by the court. Our review of Mrs. Sherman's voir dire does not convince us that the trial court abused its discretion in granting the challenge. She made up her mind from what she had learned about the case. To change her mind, she would have required greater and more convincing proof from the state than the law requires.

JURY INSTRUCTIONS
Vergo contends that the trial court erred in refusing to charge the jury with her requested special charges regarding causation and the law on negligent homicide.
CCrP Art. 807 states,
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury....
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
CCrP Art. 802 requires the court to charge the jury as to the law applicable to the case. The trial court is required to charge the jury, when properly requested, as to the law applicable to any theory of defense which the jurors reasonably could infer from the evidence. State v. Johnson, 438 So.2d 1091 (La.1983).
The refusal to give a requested special charge does not warrant reversal of a defendant's conviction unless it prejudices substantial rights of the accused. CCrP Art. 921; State v. Marse, 365 So.2d 1319 (La.1978); State v. Johnson, 514 So.2d 684 (La.App.2d Cir.1987).

*1364 CAUSATION INSTRUCTION
Vergo's first requested special charge stated,
A causal relation between the defendant's conduct and the harm for which the prosecutor seeks to impose criminal sanctions is an essential element of every crime. Causation is a question of fact which has to be considered in the light of the totality of circumstances surrounding the ultimate harm and its relation to the actor's conduct. A defendant should not be held responsible for remote and indirect consequences which a reasonable person could not have foreseen as likely to have flowed from his conduct or from those consequences which would have occurred regardless of his conduct. Authority: State v. Kalathakis, ...
Vergo submits that each element of manslaughter was not proven beyond a reasonable doubt since several theories of manslaughter covered by the general charge require proof beyond a reasonable doubt of a causal connection between the underlying offense and the homicide. The trial court read the manslaughter article to the jury. The more pertinent part of the article reads:
Manslaughter is:
. . . .
(2) A homicide committed, without any intent to cause death or great bodily harm:
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person;...
LRS 14:31.
The language of LRS 14:31(2)(a) [felony- or misdemeanor-manslaughter], which is an unintentional homicide, requires the state to prove beyond a reasonable doubt that defendant was engaged in the underlying offense when the homicide was committed. LRS 15:271.
In State v. Kalathakis, 563 So.2d 228 (La.1990), the court reversed the defendant's conviction for manslaughter of her co-perpetrator who was fleeing the scene where he and the defendant were engaged in an attempt to manufacture methamphetamine. A sheriff's deputy shot the co-perpetrator while he was fleeing and shooting at the deputy and others. The state theorized that causation was not a factor because the homicide was a felony-manslaughter occurring while defendant was engaged in the attempted manufacture of methamphetamine, the proof of which was sufficient to convict. The court disagreed:
The evidence ... was insufficient for a rational juror to conclude that defendant's conduct related to the manufacturing of drugs was a substantial factor in bringing about [co-perpetrator's] death.
The instructions to Vergo's jury included definitions of illegal use of a weapon, attempted possession of cocaine, and aggravated assault. Kalathakis perhaps would control if the cocaine charge was the sole underlying offense. Aggravated assault is the underlying offense.
Vergo did not testify. When viewed in the light that most favorably supports the verdict, the evidence shows that Vergo went to the Cedar Grove area armed with a pistol. She deliberately and intentionally pointed and twice fired the pistol toward the group of males who were fleeing from her car after McDonald grabbed the cocaine he had given her and was running away, and someone had yelled that she had a pistol. Vergo did not fire into the air or ground.
A jury is not constitutionally required to agree on a single theory to convict a defendant where it is instructed as to alternative theories. Schad v. Arizona, ___ U.S. ___, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), rehearing denied. Therefore, Vergo's conviction can be upheld if there is sufficient evidence based on any of the alternative theories with which the jury was charged.
Under the instructions that were given, the jury could have found on overwhelming evidence that Vergo's deliberate and intentional firing of a pistol toward a person or persons for the purpose of scaring him or them was aggravated assault, a misdemeanor *1365 directly affecting the person, which is misdemeanor-manslaughter under LRS 14:31(2)(a). Assault is a generally intended crime (LRS 14:36), while (2)(a)-manslaughter is not.
The overwhelming evidence is that Vergo fired voluntarily, deliberately and intentionally even if the argument is accepted that she panicked and wanted to "scare" the crowd away from her. The trajectory of Vergo's two shots were level and about 4½ feet from the ground. One shot went into a fence post and the other into McKinney, her unintended victim. Manslaughter (2)(a) is defined as a homicide committed without intent to cause death or great bodily harm when the offender is engaged in the perpetration of aggravated assault. A rational juror could have found from uncontradicted evidence that the consequences (scaring the crowd) were "intended" by Vergo and that McKinney died as a result of the fatal shot which Vergo voluntarily fired from her pistol, even though the homicide was an unintended consequence of her conduct. LRS 14:10.
The general intent element of aggravated assault (using a pistol to intentionally place the crowd in fear) is satisfied when the circumstances indicate that that consequence was reasonably certain to result from Vergo's conduct in firing the pistol. LRS 14:10(2).
The element of the unintended consequence of McKinney's death, a (2)(a) manslaughter, is satisfied if his death resulted from Vergo's being engaged in the perpetration of aggravated assault, an intentional misdemeanor directly affecting the person(s) in the crowd. The evidence is overwhelming in this respect and Vergo concedes that it was sufficient to convict under Jackson v. Virginia, supra.
Under the circumstances of this record, we find no prejudice to Vergo or error in the trial court's refusal to give Vergo's requested causation charge.

NEGLIGENT HOMICIDE INSTRUCTION
Vergo's second requested special charge stated,
Negligent homicide is a grade of criminal homicide in Louisiana but is not responsive to the instant charge. Negligent homicide is the killing of a human being by criminal negligence. Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances. If you conclude the defendant's conduct amounted to no more than criminal negligence, then you are obligated to acquit the defendant.
Defense counsel offered to withdraw the last sentence of the quoted charge, agreeing that the sentence was not wholly correct. Guilty of negligent homicide is not included among the responsive verdicts to manslaughter under CCrP Art. 814. Where there is evidence from which the jury can infer that defendant is guilty of negligent homicide, the trial court must charge the jury with the defendant's requested special charges on the law of negligent homicide. State v. Marse, supra. However, where there is no evidence or testimony to support a finding that a homicide occurred as a result of negligence, the trial court's refusal to give instructions regarding negligent homicide and criminal negligence is not error. State v. Jackson, 450 So.2d 621 (La.1984); State v. Beck, 445 So.2d 470 (La.App.2d Cir.1984), writ denied; State v. Felo, 454 So.2d 1150 (La.App. 4th Cir.1984), writ denied.
Whether the trial court erred in refusing Vergo's requested instruction on negligent homicide depends upon whether the negligent homicide verdict is fairly supported by the record. State v. Johnson, supra. Here a responsive negligent homicide verdict is not fairly supported or suggested by the record. We have only the argument of Vergo's counsel. Vergo did not testify. Compare the defendant's testimony and the circumstances in Marse, supra. Vergo first denied to the police that she had a gun. After the police confronted her with the pistol they found in the restroom, she *1366 told them that she had fired it after people in the crowd began shooting at her. Her explanation to police does not negate the other testimony before the jury that she pointed and twice fired the pistol toward the crowd fleeing her car.
Even the argument that Vergo is guilty only of negligent homicide if she fired to let the drug dealers know that she was armed or because she panicked and wanted to scare the crowd away does not negate that conclusion that she fired her pistol deliberately and voluntarily toward the fleeing crowd with the general intent to scare the crowd away. This is the prescribed criminal conduct that produced criminal consequences: aggravated assault (intended) and (2)(a)-manslaugher (unintended). LRS 14:4. Evidence, as in Marse, may require that negligent homicide be charged to the jury. The evidence in this record does not require the charge because all witnesses who testified what they saw Vergo do with the pistol were consistent in saying that she pointed and fired it in the direction that the crowd was fleeing from her car. Argument alone is not sufficient to suggest that Vergo was only guilty of negligent homicide. Again, compare Marse, supra.
We conclude that the refusal to give the requested special charge on the law of negligent homicide was not error under this record. Vergo's further argument about the trial court's failure to instruct the jury on criminal negligence (LRS 14:12) is also found without merit for the above reasons. The crime of illegal use of a weapon is either "the intentional or criminally negligent discharging of any firearm ... (our emphasis)." Vergo's requested charge is broader and includes more than the definition of criminal negligence. The entire request was not pertinent or fairly supported by the record. We find no merit in the assignment that the trial court erred in refusing to give the requested criminal negligence-negligent homicide charge. CCrP Art. 807.

DECREE
Vergo's conviction is AFFIRMED.

ON APPLICATION FOR REHEARING
Before MARVIN, C.J., and SEXTON, NORRIS, VICTORY and BROWN, JJ.
The application for rehearing filed by Defendant/Appellant has this day been DENIED.
VICTORY and BROWN, JJ., dissent from denial of rehearing. We believe a rehearing should be granted on the issue of whether under the facts presented the jury should have been charged on the law of negligent homocide.