JiGAUDIN, Judge.
Appellant Loris Houston was convicted by a jury of the second degree murder of her two-year-old son Leroy and sentenced to life *20 imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
She contends on appeal that the trial judge in the 24th Judicial District Court erred in rejecting her request for jury charges on negligent homicide and criminal negligence; also, she asks this Court to search for errors patent.
The trial court correctly denied Houston’s request for jury charges on negligent homicide and criminal negligence, considering facts and circumstances of this case. The only error patent is the trial court’s failure to advise Houston of LSA-C.Cr.P. art. 930.8, which limits a convicted defendant’s application for post conviction relief to three years. Accordingly, we affirm Houston’s conviction and sentence and we remand to the district court with instructions to the trial judge to inform Houston, by written notice, of the provisions of Art. 930.8 and to file proof in the record that Houston received such notice.
Houston was tried on March 21, 22 and 23, 1995. The jury learned that on the morning of November 23, 1992, Houston was walking with her two children, Leroy and one-year-old Carlnisha, on Estalotte Street in ^Jefferson Parish. Leroy was walking slowly ahead of Houston while Carlnisha was in a baby stroller.
A witness, Morris Williams Jr., saw Houston scold Leroy for not walking faster and then watched as Houston hit Leroy several times. Williams offered his assistance. Houston and the children were taken to the home of Clinton Ott, a former neighbor of Houston’s.
Ott testified that Leroy’s head was injured. He drove Houston and her children to Charity Hospital, where. Leroy was treated by a registered nurse, Gaynell Hunt.
Hunt said that Leroy then was unconscious and barely breathing. In addition to the head trauma, there were multiple bruises on Leroy’s chest and back. Hunt contacted child protective services and so informed Houston. Houston then told Hunt that she was walking with her children to the welfare office, and Leroy would not stay next to the stroller. She said she became angry and hit Leroy until he fell and was unable to get up.
Dr. Bradley Bartholomew, a resident in neurosurgery at Charity, diagnosed Leroy with blood clots on both sides of his brain. These blood clots were located between the covering of the brain and the brain itself, which is indicative of severe trauma. X-rays revealed that Leroy had sustained a skull fracture. The doctor testified that Leroy had retinal hemorrhaging, consistent with being shaken. As a result of his injuries, Leroy’s brain swelled, causing loss of brain function and impairing his ability to breathe. The child was placed on a respirator and Dr. Bartholomew attempted surgery to relieve the brain swelling. The damage, however, was too extensive. Leroy died.
Monya Ward, an investigator with the Office of Community Services, interviewed Houston in a hospital waiting area while Leroy received medical Igtreatment. Houston admitted that she hit Leroy during their walk to the welfare office. She also told Ward that she had beaten Leroy earlier that morning because he had refused to eat and put on his clothes. She admitted to beating the child with a broom handle, a hanger, a slipper and her hand the previous evening because he had defecated on the floor.
Houston told Ward that she disliked her son, whose father was her former husband. She explained that Leroy reminded her of his father, who had physically abused her.
Sergeant Valencia Washington of the Jefferson Parish Sheriff’s Office and homicide detective Grey Thurman went to the hospital to investigate the case. Thurman informed Houston of her rights, which she waived. She gave a tape-recorded statement in the emergency room in which she admitted that she had beaten her son. The taped statement was admitted as evidence at trial and was played for the jury.
Dr. Paul McGarry, a forensic pathologist with the Orleans Parish Coroner’s Office, performed Leroy’s autopsy. He testified that blunt injuries to the front, back and sides of the child’s head and on the back of the neck caused massive swelling of the brain, which in turn caused the lungs and *21 other tissues of the body to swell and become congested. Dr. McGarry concluded that Leroy had been beaten to death.
After all witnesses had testified, the defense asked the trial judge to instruct the jury on the elements of negligent homicide (LSA-R.S. 14:32) and criminal negligence (LSA-R.S. 14:12), crimes which do not require specific intent to kill or to inflict great bodily harm. Second degree murder (LSA-R.S. 14:30) does require such intent, as does manslaughter (LSA-R.S. 14:31), one of three responsive jury verdicts to second degree murder, along with guilty as charged and not guilty.
^Negligent homicide is the killing of a human being by criminal negligence, which is described thusly (in R.S. 14:12):
“Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender’s conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.”
While the defense counsel admitted that “Leroy was battered,” he contended that Houston did not have the specific intent to kill Leroy or to inflict great bodily harm on him because she was mentally retarded with an I.Q. of 62.
Considering the evidence in this case, the trial judge did not err. Leroy wasn’t fatally injured by a single hitting incident or by incidents which appeared to lack the specific intent to inflict great bodily harm. Houston admitted that she did not like Leroy and that she had repeatedly struck him with a broom handle and other implements over at least a two-day period.
Dr. Marc Zimmerman a forensic psychologist called by the defense, testified that a mentally retarded person with an I.Q. of 62 can nonetheless distinguish between right and wrong.
Intent was at issue in Houston’s trial. The trial judge properly instructed the jury regarding the burden of proof and the intent necessary to prove second degree murder. The jury was told that if the prosecution did not prove specific intent beyond a reasonable doubt, Houston should be found not guilty.
LSA-C.Cr.P. art. 807, in pertinent part, states:
“A requested special charge shall be given by the court if it does not require qualification, limitation or explanation, and if it is wholly correct and pertinent.”
| gGenerally, a trial judge is not required to instruct the jury regarding crimes not responsive to the offense charged. Here, there was scant if any meaningful evidence of either negligent homicide or criminal evidence. The evidence, including Houston’s own statements, overwhelmingly supports the far more serious charge of second degree murder.
If, however, jurors found no specific intent, Houston would have been found not guilty. The general charge given to the jury clearly spelled out the requisite intent for a guilty as charged verdict. The refusal to read a requested charge does not warrant a reversal unless it prejudices a defendant’s substantial rights. See State v. Vergo, 594 So.2d 1360 (La.App. 2 Cir.1992), writs denied at 598 So.2d 373 (1992). Houston was not prejudiced by either the charge given or the charge not given.
CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.