509 So.2d 47 (1987)
STATE of Louisiana
v.
Eric FOSTER.
No. KA 861259.
Court of Appeal of Louisiana, First Circuit.
May 27, 1987.
William R. Campbell, Jr., New Orleans, for plaintiff-appellee State of La.
James Talley, Public Defender, Franklinton, for defendant-appellant Eric Foster.
Before GROVER L. COVINGTON, C.J., and LANIER and ALFORD, JJ.
ALFORD, Judge.
Defendant, Eric Foster, was charged by bill of information with simple escape, a violation of LSA-R.S. 14:110(A). He pled not guilty and, after trial by jury, was found guilty as charged. Defendant received a sentence of three years at hard labor. He has appealed, alleging three assignments of error:
1. The trial court erred in allowing hearsay testimony into evidence over defense objection.
2. The evidence was insufficient to support defendant's conviction of simple escape.
3. The trial court erred in denying defendant's motion for new trial.

FACTS
On January 27, 1986, Washington Parish Sheriff's Deputy Ralph Corkern was summoned to the Washington Parish courthouse in Franklinton, Louisiana, to investigate a disturbance. Captain Jack Underwood accompanied Deputy Corkern to the courthouse. Deputy Corkern testified that, on the way to the courthouse, Captain Underwood stated, "they were having a problem *48 out in the hall of the Courthouse where there was too much racket and so forth." Apparently, Captain Underwood had learned this information from another law enforcement officer, Buddy McDaniels. Deputy Corkern and Captain Underwood stood in the hall outside the main courtroom door. Deputy Corkern testified he understood a black Bogalusa police officer was testifying against some people being tried for drug charges and their friends were the people causing the disturbance. He also testified that the black police officer told him he had been threatened by defendant.
Deputy Corkern testified that when he arrived at the scene, "they were pretty loud and they was (sic) using a good many `F's' and so forth." As he was observing the situation, defendant deliberately bumped into him. Deputy Corkern stated:
Eric Foster came to the door and looked both ways, looked at me, and looked down toward Captain Underwood and two or three more officers down there, and he went back. Then when he came back, it was just a few minutes later, he came around and bumped into me. In all fairness, I have got to say he didn't intend to hurt me. He did it for intimidation.
Deputy Corkern then arrested defendant for disturbing the peace. Deputy Corkern testified that, although he was not wearing his uniform, he was wearing his pistol and a uniform jacket with the words "Washington Parish Sheriff's Department" on the back of the jacket. He was holding defendant by the arm as he escorted him out of the courthouse. Suddenly, defendant slipped out of his jacket and fled, stating "You can have that jacket, I'm gone." Deputy Corkern took the jacket back upstairs and questioned a man that had been with defendant about the identity of the man he had arrested. This man requested the keys out of defendant's jacket because "Foster had driven them out here." Deputy Corkern testified that defendant was arrested later that night by Bogalusa police officers.

LAW
We find merit in defendant's argument that his conduct in this case should fall under the resisting an officer statute, LSA-R.S. 14:108, and not under the simple escape statute, LSA-R.S. 14:110.
LSA-R.S. 14:108 provides, in pertinent part:
A. Resisting an officer is the intentional opposition or resistance to or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, seizing property, or serving process is acting in his official capacity.
B. (1) The phrase "obstruction of" as used herein shall, in addition to its common meaning, signification, and connotation mean the following:
* * * * * *
(b) Any violence toward or any resistance or opposition to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail.
LSA-R.S. 14:110 provides, in pertinent part:
A. Simple escape shall mean any of the following:
(1) The intentional departure, under circumstances wherein human life is not endangered, of a person imprisoned, committed, or detained from a place where such person is legally confined, from a designated area of a place where such person is legally confined, or from the lawful custody of any law enforcement officer or officer of the Department of Public Safety and Corrections.
* * * * * *
B. (3) A person imprisoned, committed, or detained who commits the crime of simple escape as defined in Paragraph A(1) of this Section shall be imprisoned with or without hard labor for not less than two years nor more than five years; *49 provided that such sentence shall not run concurrently with any other sentence.
* * * * * *
D. For purposes of this Section, a person shall be deemed to be in the lawful custody of a law enforcement officer or of the Department of Public Safety and Corrections and legally confined when he is in a rehabilitation unit, a work release program, or any other program under the control of a law enforcement officer or the department.
E. The provisions of this Section shall be applicable to all penal, correctional, rehabilitational, and work release centers and any and all prison facilities under the control of the sheriffs of the respective parishes of the state of Louisiana. The prison facilities shall include but are not limited to parish jails, correctional centers, work release centers, and rehabilitation centers, hospitals, clinics, and any and all facilities where inmates are confined under the jurisdiction and control of the sheriffs of the respective parishes.
A comparison between these two statutes leads to the conclusion that the legislature intended LSA-R.S. 14:110 to apply to persons who have been physically placed in a jail facility. Although the instant fact situation could be considered "lawful custody," the defendant having just been the subject of a lawful arrest[1], the terms "lawful custody" and "legally confined" are discussed in LSA-R.S. 14:110(D) and contemplate a situation where a defendant has already been convicted and sentenced. State v. Perry, 364 So.2d 900 (La. 1978); State v. Verrett, 347 So.2d 230 (La. 1977). LSA-R.S. 14:108(B)(1)(b) covers conduct occurring "after the arrested party is actually placed under arrest and before he is incarcerated in jail."
Furthermore, LSA-R.S. 14:110(B)(3) provides that the sentence imposed for simple escape shall not run concurrently with any other sentence. This provision presupposes that a sentence has previously been imposed for another crime. Prior to recent amendments to the simple escape statute, the sentence imposed for simple escape depended on whether the defendant had committed a felony or misdemeanor. State v. Taylor, 347 So.2d 172 (La. 1977); State v. Cox, 344 So.2d 1024 (La. 1977). The sentence now depends on whether a defendant escapes from a work release program, an authorized furlough, or a place of legal confinement or lawful custody. LSA-R.S. 14:110(B). The trial judge thus erred in sentencing defendant to a term of three years at hard labor "to run consecutive with any other sentence he might be serving," since the record does not indicate that defendant had been sentenced for another crime that would be enhanced by a simple escape conviction.
For the above and foregoing reasons, we reverse and set aside the conviction and sentence of defendant, Eric Foster, and remand to the trial court for further proceedings not inconsistent herein.
REVERSED AND REMANDED.
NOTES
[1] The issue of the lawfulness of the arrest is pretermitted.