576 So.2d 453 (1991)
STATE of Louisiana
v.
James BULLOCK.
No. 90-K-1673.
Supreme Court of Louisiana.
March 11, 1991.
*454 M. Craig Colwart, Orleans Indigent Defender, for James Bullock, defendant-applicant.
Harry Connick, Dist. Atty. and Charmagne Padua, Asst. Dist. Atty., for the State, plaintiff-respondent.
MARCUS, Justice.
On February 1, 1987, police responded to a call of burglary in progress at an Exxon station located at 3725 South Carrollton Avenue in New Orleans. They looked inside the building, where they saw defendant attempting to hide. When the police ordered defendant to halt, he ran away, crashing through a plate glass window. Defendant was apprehended after a brief chase. Cut and bleeding, he was arrested, handcuffed and taken by police from the scene directly to Charity Hospital for treatment of his lacerations. Once at the hospital, defendant was placed on a stretcher in the emergency accident room. The doctor advised the police to take defendant's handcuffs from behind him and place them in front so he could be treated. After the police did so, defendant jumped off the stretcher and fled out the back door of the emergency room to the hallway leading out of the hospital. Defendant was apprehended when he collided with a hospital security guard, and was arrested for simple escape.
Defendant was subsequently charged by bill of information with unauthorized entry of a place of business in violation of La. R.S. 14:62.4 and simple escape in violation of La.R.S. 14:110. On defendant's motion, the two offenses were severed. After separate jury trials, he was found guilty of both offenses. He was sentenced as a multiple offender to twelve years at hard labor for unauthorized entry, and to five years at hard labor for simple escape, the sentences to run consecutively. In addition, defendant was found guilty of seven counts of contempt of court and sentenced to seven consecutive six-month sentences, to run consecutively to his other sentences. Defendant's convictions and sentences were affirmed on appeal.[1] On defendant's application, we granted certiorari.[2]
The issues presented for our consideration are: (1) whether the state presented sufficient evidence of the essential elements of the crime of simple escape; (2) whether the trial judge erred in denying a jury charge requested by the defense; and (3) whether the trial judge abused his discretion by holding defendant in contempt seven times and imposing maximum consecutive sentences.

Simple Escape
The simple escape statute, La.R.S. 14:110, provides in pertinent part:
*455 A. Simple escape shall mean any of the following:
(1) The intentional departure, under circumstances wherein human life is not endangered, of a person imprisoned, committed, or detained from a place where such person is legally confined, from a designated area of a place where such person is legally confined, or from the lawful custody of any law enforcement officer or officer of the Department of Public Safety and Corrections.
(2) The failure of a criminal serving a sentence and participating in a work release program authorized by law to report or return from his planned employment or other activity under the program at the appointed time.
(3) The failure of a person who has been granted a furlough under the provisions of R.S. 15:833 or R.S. 15:908 to return to his place of confinement at the appointed time.
B. (1) A person who is participating in a work release program as defined in Paragraph A(2) of this Section and who commits the crime of simple escape shall be imprisoned with or without hard labor for not less than six months nor more than one year and any such sentence shall not run concurrently with any other sentence.
(2) A person who fails to return from an authorized furlough as defined in Paragraph A(3) of this Section shall be imprisoned with or without hard labor for not less than six months nor more than one year and any such sentence shall not run concurrently with any other sentence.
(3) A person imprisoned, committed, or detained who commits the crime of simple escape as defined in Paragraph A(1) of this Section shall be imprisoned with or without hard labor for not less than two years nor more than five years; provided that such sentence shall not run concurrently with any other sentence.
....
D. For purposes of this Section, a person shall be deemed to be in the lawful custody of a law enforcement officer or of the Department of Public Safety and Corrections and legally confined when he is in a rehabilitation unit, a work release program, or any other program under the control of a law enforcement officer or the department.
E. The provisions of this Section shall be applicable to all penal, correctional, rehabilitational, and work release centers and any and all prison facilities under the control of the sheriffs of the respective parishes of the state of Louisiana. The prison facilities shall include but are not limited to parish jails, correctional centers, work release centers, and rehabilitation centers, hospitals, clinics, and any and all facilities where inmates are confined under the jurisdiction and control of the sheriffs of the respective parishes.
(emphasis added).
The elements of the statute applicable to the instant case are (1) an intentional departure (2) under circumstances wherein human life is not endangered (3) by a person detained (4) from the lawful custody of any law enforcement officer. Defendant does not contest the first three elements, nor does he contest the lawfulness of his arrest, but argues the fourth element is not satisfied in the present case. He relies on State v. Foster, 509 So.2d 47 (La.App. 1st Cir.1987), for the proposition that the legislature intended the term "lawful custody" to apply only to persons who have been already placed in a jail facility, and not to persons like him who have been arrested but not yet confined. We find no merit to this contention.
In reaching the conclusion that "lawful custody" did not apply to persons lawfully arrested but not yet confined, Foster relied on section D of the statute. The court found this section contemplated a situation where the defendant had already been convicted and sentenced, and thus modified the term "lawful custody" as used throughout the statute. The fallacy of the Foster court was its failure to recognize that La. R.S. 14:110 is written in the disjunctive, and applies to two different categories of persons. The first category focuses on prior confinement and deals with an intentional *456 departure by a person "imprisoned" or "committed" from a place where such a person is legally confined. Since this category includes persons in rehabilitational, furlough or work release programs who may not be physically confined, section D deems such persons to be in the lawful custody of a law enforcement officer and legally confined for purposes of the statute.[3] The second category, totally distinct from the first, involves the intentional departure of a detained person from the lawful custody of any law enforcement officer. Clearly, there is no requirement of prior confinement in this category. The error of the Foster court was to use section D, which applies to the first category only, to explain the term "lawful custody" as applied to the second category. In doing so, the court ignored the disjunctive scheme set up by the legislature.
After careful review of the statute and its history, we find no indication the legislature intended to limit "lawful custody" as used in this second category to persons who had been legally confined. Foster erred in applying this limitation, and it is overruled insofar as it conflicts with this opinion. Viewing the evidence in the present case in the light most favorable to the prosecution, we conclude a rational jury could have found the crime of simple escape was proved beyond a reasonable doubt.

Jury Charge
At trial, defendant requested the trial judge give the jury the following charge:
The accused respectfully asks this Court to instruct the jury that if it finds that the accused's action occurred only as a result of a lawful arrest by a law enforcement officer in the pursuit of his legal duties, then a reading of R.S. 14:108 would indicate that he is guilty of resisting an officer.
Therefore, the accused requests this Court to read R.S. 108 in its entirety to the jury and instruct them accordingly under the authority of State v. Foster, 509 So.2d 47 (La.App. 1 Cir.1987), and State v. Marse, 365 So.2d 1319 (La.1978), and instruct it that if they find that the evidence points to a violation of R.S. 14:108, then it must return a verdict of "not guilty."
The trial judge denied the charge.
Under State v. Marse, 365 So.2d 1319 (La.1978), "the trial judge is required to charge the jury, in response to an otherwise proper request, as to the law applicable to any theory of defense which a jury could reasonably infer from the evidence." The theory of the defense in the present case was apparently that a finding of guilt under La.R.S. 14:108 would preclude a finding of guilt under La.R.S. 14:110. In order to determine whether such a theory could be reasonably inferred from the evidence, we must examine La.R.S. 14:108.
La.R.S. 14:108 provides in pertinent part:
A. Resisting an officer is the intentional opposition or resistance to or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, seizing property, or serving process is acting in his official capacity.
B. (1) The phrase "obstruction of" as used herein shall, in addition to its common meaning, signification, and connotation mean the following:
(a) Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.
(b) Any violence toward or any resistance or opposition to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail.

(emphasis added).
In support of his theory, defendant argues section (B)(1)(b) of the above statute, rather than La.R.S. 14:110, defines his conduct. He implies that since section (B)(1)(b) *457 covers his conduct, La.R.S. 14:110 cannot cover the same conduct.
The language of La.R.S. 14:108 clearly indicates the legislature did not intend to cover the same conduct covered under La.R.S. 14:110. In section A of 14:108, the legislature defines resisting an officer as "intentional opposition or resistance to or obstruction of" an officer. In section (B)(1)(a), "obstruction of" is additionally defined as "flight," but only by one who has not yet been restrained. Section (B)(1)(b), dealing with actions which are post-arrest but pre-incarceration, again refers to "resistance or opposition," making no mention of "flight." We interpret the use of these terms as signifying the legislature did not believe "flight" was encompassed within "resistance or opposition," and that it intended to address flight only in the narrow instance of one not yet restrained.[4] Thus, section (B)(1)(b), while dealing with post-arrest conduct, prohibits only resistance and opposition, but not flight. Presumably, the legislature felt no need to address post-restraint flight in section (B)(1)(b), since such conduct would amount to an intentional departure by a person detained from the lawful custody of a law enforcement officer and would be covered by La.R.S. 14:110.
In the instant case, defendant's actions do not fall under section (B)(1)(a), since he was restrained at the time of his flight from the emergency room. Nor do defendant's actions fall under section (B)(1)(b), since his actions do not involve resistance or opposition. Therefore, since the evidence clearly indicates defendant was restrained and under arrest at the time he fled from the emergency room, it follows the jury could not have reasonably inferred he was guilty of resisting arrest instead of simple escape. Moreover, since La.R.S. 14:108 and La.R.S. 14:110 constitute two separate crimes, defendant's status under La.R.S. 14:108 is irrelevant to a determination of whether he is guilty under La.R.S. 14:110. Accordingly, the trial judge correctly refused to give the requested instruction.

Contempt of Court
After the trial judge granted an oral motion for appeal and the appellate counsel was appointed, the following dialogue occurred between the trial judge and defendant:
THE DEFENDANT: Fuck you.
THE COURT: Back here.
THE DEFENDANT: Fuck you.
THE COURT: Back here, padner [sic]. Let the record reflect the defendant just told the Court twice "fuck you."
THE DEFENDANT: Fuck you, asshole.
THE COURT: No, you, Mr. Bullock.
THE COURT: Three counts in direct contempt of court consecutive, 18 months. Do you want to go for two years?
THE DEFENDANT: Fuck you.
THE COURT: Two years direct contempt.
THE DEFENDANT: Fuck you, asshole.
THE COURT: Two years, six months.
THE DEFENDANT: Fuck you.
THE COURT: Three years consecutive contempt.
THE DEFENDANT: Fuck you, asshole.
THE COURT: Three and a half years, Mr. Bullock. Three years, six months, direct contempt of court consecutive to the 17 years the Court just gave him.
MR. JOHNSON [DEFENSE COUNSEL]: Just for the record, note an objection.
THE COURT: That will be noted also. Let's go on the record as to James Bullock, so the Court of Appeals [sic] will know what happened. Mr. Bullock twice screamed "fuck you" to the Court after the Court had sentenced him. The Court found both to be in direct contempt and told the sheriff to escort him out of the courtroom. Mr. Bullock continued the entire way being escorted out of the courtroom, even after he was out of the courtroom before the sheriff's [sic] could *458 put him in a holding cell, continued to scream "fuck you" at the Court. The Court finds that each time he did this to be in direct contempt. It is six months on each one consecutive to the 17-year sentence the Court had just give [sic] him on the other charges.
The court of appeal found no abuse of discretion on the part of the trial judge and agreed the record reflected "each six month sentence was based on a separate instance of obscene, abusive language." In this court, defendant concedes his conduct amounted to direct contempt.[5] However, he argues the trial judge abused his discretion in giving him seven consecutive six-month sentences, especially since the trial judge's own comments seemed to invite and encourage further verbal confrontations after the first three outbursts. We agree.
There is little doubt that "the fair and efficient administration of justice requires that respect for the dignity of the courts be maintained and that willful disobedience or deliberate defiance of the court's authority be punished." In re Milkovich, 493 So.2d 1186 (La.1986). However, the power to jail for contempt is given to the judge "on the assumption that it will be judiciously and sparingly employed." In re Masinter, 355 So.2d 1288 (La.1978). In the present case, it is clear the last four insults came in response to a colloquy initiated by the trial judge. This court has previously held that a "response to a question by the judge which seemed to invite and encourage further verbal sparring" is not contemptuous. Id. We apply that reasoning to the present case, and reverse defendant's last four contempt convictions. As to the three earlier outbursts, we believe the trial judge was within his discretion in finding they constituted three separate acts of contempt. Given the fact that all three were part of a single contemptuous episode, however, we feel a more appropriate penalty would be three concurrent six-month sentences, to run consecutively to defendant's other sentences.[6]

DECREE
For the reasons assigned, defendant's conviction and sentence for simple escape are affirmed. The judgment affirming defendant's convictions and sentences for seven counts of criminal contempt are reversed and set aside as to the last four counts, and amended to provide the sentences for the three remaining counts will run concurrently with each other and consecutively to defendant's sentences on the underlying convictions. In all other respects, the judgment of the court of appeal is affirmed.
CALOGERO, C.J., dissents in part, concurs in part and assigns reasons.
LEMMON, J., dissents in part for the reasons assigned by CALOGERO, C.J.
*459 COLE, J., dissents from the reversal of defendant's convictions and sentences for the seven counts of Criminal Contempt, and otherwise concurs.
CALOGERO, Chief Justice, dissenting in part, concurring in part.
I join that portion of the majority's opinion concerning the contempt of court issue.
I dissent, however, from that portion of the majority's opinion affirming the defendant's conviction of simple escape under LSA-R.S. 14:110. The majority's interpretation of the simple escape statute is not unreasonable, but it is contrary to the legislative intent. LSA-R.S. 14:108 (resisting an officer) and LSA-R.S. 14:110 (simple escape), when read together, as well as separately, reveal that the former statute applies to departure prior to actual incarceration while the latter covers departure after actual incarceration.
The majority's conclusion that R.S. 14:110 contemplates two categories of persons is mistaken, in my view. In conclusory terms, the majority creates two categories out of the three words used in R.S. 14:110(A)(1); the first category includes persons "imprisoned" or "committed," thus requiring prior confinement, while the second category includes persons "detained," thus assertedly not requiring prior confinement. A broad reading of the simple escape statute could reasonably lead to the majority's conclusion that arrestees should not be excluded. However, a genuine construction in light of its legislative history gives substantial substance to the defendant's argument that his actions do not fall under the intended purview of R.S. 14:110.
The history of the simple escape statute reveals that the present version of R.S. 14:110 evolved from the original prison breaking statute. Acts 1942, No. 43, § 1, Art. 110. In 1954, the statute was amended to make simple escape an offense covering the intentional departure of a person from the custody of "any officer or official of the Louisiana State Penitentiary or from any place where he is lawfully detained by any officer or official of the Louisiana State Penitentiary." The penalty for simple escape depended on the nature of the defendant's underlying (and previous) conviction: felons were exposed to two to five years at hard labor, while misdemeanants were exposed to up to one year in parish prison. Acts 1954, No. 122, § 1. The statute clearly applied only to inmates serving sentences of imprisonment.
In 1963, simple escape was again amended to simplify the language and expand its scope. The crime was then defined as the intentional departure "of a person, while imprisoned, whether before or after sentence... from lawful custody of any officer or from any place where he is lawfully detained by any officer." Acts 1963, No. 65, § 1 (emphasis added). Thus, contrary to the majority's reading, the term "detained" as viewed from its legislative origins clearly required imprisonment. Furthermore, under R.S. 14:110 the "officer" who had custody of the person was connected in some way with the handling of prisoners, whereas the "officer" under the resisting an officer statute refers to "deputy sheriffs, municipal police officers, and wildlife enforcement agents." LSA-R.S. 14:108(B)(2). The language from the 1963 amendment to R.S. 14:110 continued through the amendments of 1968, 1970 and 1972. Acts 1968, No. 189, § 1; Acts 1968, No. 647, § 1; Acts 1970, No. 290, § 1; Acts 1972, No. 740, § 1.
With Acts 1975, No. 450, § 1, the legislature deleted the language referring to a person "while imprisoned, whether before or after sentence" but retained the language referring to "the lawful custody of any law enforcement officer or officer of the Department of Corrections from any place where such person is legally confined." The penalty section of this revised statute, however, remained unchanged such that its length was determined by the underlying offense. In the following legislative session, the simple escape statute was amended to clarify the situations whereby the law deemed "lawful custody" in situations having to do with normal movement, treatment and rehabilitation of prisoners. Acts 1977, No. 455, § 1 added the present subsection (D) which dealt in *460 greater detail with the applicability of the simple escape statute. The penalty provisions, however, remained unchanged until 1985. Acts 1985, No. 413, § 1.
Beginning with Acts 1978, No. 177, § 1, the legislature began to graduate the penalties for simple escape. This evolution, however, appears to be directly tied to the "place" from which a person has intentionally departed. Acts 1984, No. 746, § 1; Acts 1985, No. 413, § 1. As the simple escape statute now stands, the penalty range is as follows: if a prisoner does not report to his place of employment under a work release program or does not return to his place of confinement following a furlough, he is exposed to a relative felony sentence of six months to one year; if a prisoner departs "lawful custody," he is exposed to a relative felony sentence of two to five years. The sentence of two to five years apparently corresponds to the original sentence one was exposed to under the former prison breaking statutes. Under the resisting an officer statute, if a person notified that he is under arrest flees before he can be restrained or resists arrest after restrained but before he is incarcerated in jail, he is exposed to a fine of not more than five hundred dollars or imprisonment for not more than six months, or both. LSA-R.S. 14:108(C).
Therefore, the legislature has deemed it a more severely punishable crime for an inmate to intentionally leave actual confinement; a less severely punishable crime for a prisoner serving time to leave a work site or fail to report following a furlough; and an even less severely punishable crime for an individual to actually resist an officer during or directly following an arrest. It is unlikely that the legislature would have intended that when an individual has been arrested, and told to stay where he is, he would be exposed to a sentence of two to five years to leave that point, when, by comparison, a convicted individual who escapes from a job site is only exposed to six months to one year.
In addition to the history of the simple escape statute, its present provisions refute the majority's construction. Subsection (E) of the simple escape statute directs the courts to the types of facilities included. Subsection (E) mandates that the "provisions" of this section "shall be applicable to all penal, correctional, rehabilitational, and work release centers and any and all prison facilities...." The subsection goes on to explain that such places shall include "hospitals... where inmates are confined under the jurisdiction and control of the sheriffs...." LSA-R.S. 14:110(E) (emphasis added). The majority fails to address this telling subsection by relegating any discussion of it to a footnote. See footnote 3 of the majority opinion, supra.
The majority's second category of "detained" individuals creates the anomalous situation wherein a person who breaks away while being arrested and is chased down is committing the misdemeanor crime of resisting arrest, while a person who is caught and then runs is committing the felony crime of simple escape. The legislative scheme does not support the majority's reading of the simple escape statute to cover situations such as the one at bar. The simple escape statute was intended to apply to the escape of prisoners, and was not intended by the legislature to be applied to an individual in the situation where he runs after being arrested but prior to being placed in a jail facility.
Defendant's actions fall under R.S. 14:108(B)(1)(b) in that he did offer resistance to the arresting officers prior to being placed in a jail facility. Given the vast disparity in the penalty provisions between the resisting an officer and simple escape statutes, it cannot be said that the two statutes "overlap." Therefore, the district attorney was not empowered to choose which provision to prosecute. La.C.Cr.P. art. 61; LSA-R.S. 14:4. The defendant is serving twelve years at hard labor for unauthorized entry. For the foregoing reasons, the consecutive sentence of five years for simple escape should be reversed.
NOTES
[1] On March 30, 1989, upon defendant's pro se application, the court of appeal reviewed and affirmed his seven sentences for contempt. State v. Bullock, No. 88-K-2123 (La.App. 4th Cir.1989) (unpublished) [542 So.2d 220 (table) ]. A second application to the court of appeal was made by defendant through his counsel. On June 14, 1990, a different panel of the court of appeal affirmed defendant's conviction for unauthorized entry, vacated his original six year sentence for this offense and affirmed his twelve year sentence under the habitual offender law. The court affirmed defendant's conviction and sentence for simple escape. It also affirmed defendant's first three convictions and sentences for direct contempt of court, but reversed and set aside his other four contempt convictions, thus reducing defendant's sentence for contempt to a total of eighteen months. State v. Bullock, 563 So.2d 552 (La.App. 4th Cir.1990). On its own motion, the court granted rehearing. It found defendant's contempt sentences were not properly before the court on June 14, 1990, having been already affirmed by a different panel on March 30, 1989. Therefore, the court amended its judgment of June 14, 1990 to affirm all seven contempt findings and sentences.
[2] 568 So.2d 1069 (La.1990).
[3] Likewise, La.R.S. 14:110(E) gives an expansive definition of "prison facilities" to deal with the different places where an inmate may be brought.
[4] This court has consistently held that flight alone is only a crime if the prerequisites of La.R.S. 14:108(B)(1)(a) have been met. State v. Hawkins, 422 So.2d 1155 (La.1982); State v. Nix, 406 So.2d 1355 (La.1981).
[5] La.Code Crim.P. art. 21 provides in pertinent part:

Art. 21. Direct contempt
A direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge....
. . . . . .
A direct contempt includes, but is not limited to, any of the following acts:
(5) Contumacious, insolent, or disorderly behavior toward the judge or an attorney or other officer of the court, tending to interrupt or interfere with the business of the court or to impair its dignity or respect for its authority;
. . . . .
(7) Use of insulting, abusive, or discourteous language by an attorney or other person in open court....
[6] We find no merit to defendant's contention that he is entitled to a jury trial because his potential penalty exceeds six months. The acts of contempt occurred during trial, and the trial judge imposed each sentence immediately after the act of contempt occurred. Each act was treated as a discrete and separate matter. Under these circumstances, the United States Supreme Court has held a jury trial is not required:

Undoubtedly, where the necessity of circumstances warrants, a contemnor may be summarily tried for an act of contempt during trial and punished by a term of no more than six months. Nor does the judge exhaust his power to convict and punish summarily whenever the punishment imposed for separate contemptuous acts during trial exceeds six months.
Codispoti v. Pennsylvania, 418 U.S. 506, 514, 94 S.Ct. 2687, 2692, 41 L.Ed.2d 912 (1974).