STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2024 CA 0396

LONESOME DEVELOPMENT, LLC

VERSUS

TOWN OF ABITA SPRINGS

*DATE OF JUDGMENT:*      DEC 1 3 2024

ON APPEAL FROM THE TWENTY SECOND JUDICIAL DISTRICT COURT
PARISH OF ST. TAMMANY, STATE OF LOUISIANA
NUMBER 2019-14436, DIVISION E

HONORABLE WILLIAM H. BURRIS, JUDGE

\* \* \* \* \* \*

| | |
|---|---|
| Phillip J. Antis, Jr.<br>Howard E. Sinor, Jr.<br>Alex B. Rothenberg<br>New Orleans, Louisiana | Counsel for Plaintiff-Appellee<br>Lonesome Development, LLC |
| Bruce A. Cranner<br>Magdalena Majka<br>Mandeville, Louisiana | Counsel for Defendant-Appellant<br>Mayor Dan Curtis |
| Andrew R. Capitelli<br>Andrew C. Wilson<br>Kenneth R. Whittle<br>Sarah A. Fisher<br>Mandeville, Louisiana | Counsel for Defendant-Appellant<br>Town of Abita Springs |
| Christopher M. Moody<br>Albert D. Giraud<br>Hammond, Louisiana | |

*Hester, J. concurs*

Paul Eric Harrison
DeShea Stelly Richardson
Shane A. Jordon
Carlos Alberto Zelaya, II
Mandeville, Louisiana
Adam Davis
Abita Springs, Louisiana

* * * * * *

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

**Disposition: AFFIRMED. EXCEPTION OF RES JUDICATA OVERRULED.**

2

**CHUTZ, J.**

Defendants-appellants, the Town of Abita Springs, Louisiana (Abita Springs) and its mayor, Dan Curtis, appeal the trial court's judgment granting a motion for contempt filed by plaintiff-appellee, Lonesome Development, LLC (Lonesome), for violating a final and definitive judgment ordering Abita Springs to comply with and render specific performance of a Public Unit Development Agreement (PUD Agreement) in accordance with its terms. We affirm the trial court's judgment, overrule the mayor's peremptory exception of res judicata, and decline to address the mayor's peremptory exception of no cause of action.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts in this litigation have been fully set forth in this court's earlier opinion. See *Lonesome Dev., LLC v. Town of Abita Springs*, 2021-1463 (La. App. 1st Cir. 6/29/22), 343 So.3d 831, writ denied, 2022-01158 (La. 11/1/22), 349 So.3d 3. For purposes of this action, we focus on those facts salient to our review as set forth in our earlier disposition, along with specific provisions of the PUD agreement.

In 2017, Lonesome and Abita Springs began discussions regarding a PUD called "Abita Meadows" on approximately 168 acres of land owned by Lonesome.[1] After multiple hearings before the Abita Springs Planning and Zoning Commission and before the Abita Springs Board of Aldermen, the parties executed the PUD Agreement in January 2018, pursuant to the Louisiana Development Agreement Law.[2] On January 16, 2018, the Board of Aldermen unanimously approved the PUD Agreement and the attached preliminary plat of the Abita Meadows PUD. *Lonesome Dev., LLC*, 343 So.3d at 833-34.

---

[1] A PUD is a specialized type of subdivision with unique zoning that permits greater flexibility in land use than that afforded under conventional zoning requirements. See *Lonesome Dev., LLC*, 343 So.3d at 833.

[2] See La. R.S. 33:4780.21-4780.33.

3

In the PUD Agreement, the parties agreed to zone the property as a PUD, ultimately to have 390 single-family residential lots, commercial and civic uses, common areas, and ponds, as depicted on the preliminary plat that was attached. Generally, the PUD Agreement provided that Abita Springs and Lonesome would share in the "obligations, burdens and benefits" of the development of the Abita Meadows PUD, and included terms regarding numerous items, including utility services. *Lonesome Dev., LLC*, 343 So.3d at 834. By May 2018, Abita Springs' consultants and engineers had approved Lonesome's plans for the infrastructure construction phase of the Abita Meadows PUD, and Lonesome proceeded with the infrastructure construction, which included the installation of a sewer and water system. *Lonesome Dev., LLC*, 343 So.3d at 834.

On January 1, 2019, Daniel Curtis, having been newly elected, replaced Greg Lemons as Abita Springs mayor. Mayor Curtis was familiar with the Abita Meadows PUD as he had previously served as one of the Board of Aldermen members who voted to approve the Abita Meadows PUD, related PUD Agreement, and preliminary plat. *Lonesome Dev., LLC*, 343 So.3d at 834.

According to the PUD Agreement, the PUD and the development thereof by Lonesome was subject to the following relevant conditions:

> 1.2.3 Central sewerage ... shall be provided by Abita Springs to the Property as provided by the provisions of Section 2 [Utility Services]....
>
> 2.1.1 For sewer service the connection point (the "Sewer Connection Point") shall be the existing manhole located at the intersection of St. James and 6th Street. [Lonesome], at its cost will prepare the plans and specifications for and install, at its cost and expense, an eight (8") inch sewer force main to connect the Property to Abita Springs' sewer system at the Sewer Connection Point. In addition, [Lonesome], at its cost, will also install a twelve (12") inch sewer force main from Abita Springs' existing lift located at Pearl Street (the "Pearl Street Lift Station") to Abita Springs' sewer treatment plant as per the plans and specifications provided by Abita Springs. **Abita Springs, at its cost, will make any and all required upgrades to the Pearl Street Lift Station to accommodate flows from the PUD.** Finally, [Lonesome],

4

at its cost, will install all necessary sewer lines and lift station(s) within the Property, pursuant to the PUD plan, so that Abita Springs can provide sewer services to all residents and businesses therein. [Lonesome] shall obtain the approval from the Abita Springs' engineer of the plans and specifications (including the diameter of the force main) prior to the Installation being commenced. [Emphasis added.]

In May 2019, through counsel, Abita Springs outlined concerns to Lonesome regarding inspections and capacity issues and claimed that Lonesome had violated various provisions of the Abita Springs Code of Ordinances.[3] In late July 2019, on advice of counsel, Mayor Curtis informed Lonesome that no more inspections would be conducted and further work on the Abita Meadows PUD was unauthorized. According to Lonesome, at that time, it had not yet completed Phase 1 of the infrastructure construction and had invested more than $6 million in the project. *Lonesome Dev., LLC*, 343 So.3d at 834-35.

In August 2019, Lonesome filed a suit for breach of contract, detrimental reliance, estoppel, specific performance, injunctive relief, and damages against Abita Springs. A claim of tortious interference was also asserted by Lonesome against Mayor Curtis. After a three-day bench trial, which included testimony from multiple witnesses and the introduction of numerous exhibits, the trial court signed a judgment, which, among other things, decreed that Abita Springs had substantially breached the PUD Agreement; ordered Abita Springs to comply with and specifically perform the PUD Agreement according to its terms; enjoined Abita Springs from any action preventing, impeding, or delaying Lonesome's development of the Abita Meadows PUD in accordance with the PUD Agreement; ordered Abita Springs to pay Lonesome $4.9 million in damages, plus interest; ordered Abita Springs to pay Lonesome attorney fees and costs to be later

---

[3] Although our earlier opinion does not specify the nature of the "capacity issues," included in evidence at the subsequent judgment-debtor examination was a report prepared in April 2020 by Principal Engineering, Inc. for Abita Springs, indicating that "[i]mprovements will need to be made for the [water waste treatment plant] to handle additional flows" from development."

determined; and decreed Lonesome's detrimental reliance claim moot. *Lonesome Dev., LLC*, 343 So.3d at 835-36. Lonesome's claims against Mayor Curtis were dismissed by the trial court with prejudice. See *Lonesome Dev., LLC*, 343 So.3d at 835 n.3.

Abita Springs appealed the trial court's judgment, raising several complaints. This court concluded the trial court committed no legal or factual error and affirmed the judgment. *Lonesome Dev., LLC*, 343 So.3d at 837-44. After Abita Springs' writ to the Supreme Court was denied, the judgment became final and definitive.[4]

Thereafter, Lonesome filed various motions including for attorney fees and costs and a judgment debtor examination. On February 7, 2023, Lonesome filed a request for a status conference, which included a request for the trial court's "guidance and assistance" in obtaining Abita Springs' compliance with the final and definitive judgment. A status conference, addressing this request by Lonesome was held on June 5, 2023.

On November 10, 2023, over a year after the judgment had become final and definitive, Lonesome filed a motion to enforce the judgment and for contempt and sanctions. Lonesome asserted that, despite the order in the final and definitive judgment, Abita Springs was not complying with the provisions to specifically perform the PUD Agreement according to its terms. Specifically, Lonesome averred that Abita Springs had not yet committed to providing the sewer connection and services to the Abita Meadows PUD. Lonesome sought, among other things, the imprisonment of the Mayor and the Board of Aldermen of Abita

---

[4] La. C.C.P. art. 2166(E) provides, in relevant part, "When an application for certiorari to the supreme court is timely filed, a judgment of the court of appeal becomes final and definitive after a delay of five days, exclusive of legal holidays, commencing to run on the day after the clerk has mailed the denial by the supreme court of the application for certiorari."

6

Springs until Abita Springs affirmatively committed that it would provide the sewer connection and services.

A hearing was held on February 7, 2024, at which testimonial and documentary evidence was adduced.[5] At the conclusion of the hearing, with detailed oral reasons, the trial court found Mayor Curtis in contempt of court. In conformity with the recited reasons for judgment, on February 29, 2024, the trial court signed a judgment ordering Mayor Curtis to be incarcerated indefinitely until he agrees to come into compliance with the final and definitive judgment. Good faith compliance was set forth in the judgment as including:

> (1) a commitment and moving forward with [the mayor's] allowing the [PUD] Agreement to proceed as written including providing adequate capacity for sewerage based upon maximum utilization as set forth [in] the PUD [Agreement]; or (2) Abita Springs providing an alternative for providing adequate capacity for sewerage based upon maximum utilization as set forth [in] the PUD [Agreement] **that is agreeable to [Lonesome]** and **at Abita Springs' expense.**

The judgment expressly ordered the mayor to appear before the court on March 11, 2024 and stated that the incarceration order would be rescinded if Mayor Curtis came into good faith compliance.[6] Abita Springs suspensively appealed, with Mayor Curtis filing his own briefs.

## DISCUSSION

### Mayor's Due Process Rights

Initially, we address Mayor Curtis's contention that he lacked notice and a hearing prior to the order of his imprisonment. He maintains that he was not served with Lonesome's motion to enforce the judgment and for contempt and sanctions

---

[5] Although the appellate record identifies Abita Springs' Exhibits #6-17 and #19-25 as proffers, the items were admitted into evidence by the trial court.

[6] The judgment further provides that while Mayor Curtis is in jail, to the extent the jail can accommodate it, the trial court will conduct weekly Zoom meetings to ascertain whether the mayor agrees to come into good faith compliance with the final and definitive judgment.

and, lacking notice, did not attend the hearing.[7] Therefore, he asserts, the judgment entered against him violates due process under the United States and Louisiana constitutions. In raising this complaint, Mayor Curtis does not deny that Abita Springs was served and, on appeal, Abita Springs has not contended that service was insufficient.

La. C.C.P. art. 1313(A) provides in relevant part:

> [E]very pleading subsequent to the original petition ... may be served either by the sheriff or by ...

> (4) Transmitting a copy by electronic means to counsel of record ... at the number or addresses expressly designated in a pleading or other writing for receipt of electronic service. Service by electronic means is complete upon transmission but is not effective and shall not be certified if the serving party learns the transmission did not reach the party to be served.

When service is made in this manner, the party or counsel making the service is required to file in the record a certificate of the manner in which service was made. See La. C.C.P. art. 1313(B).

Here, the certificate of service filed by Lonesome establishes that the motion to enforce the judgment and for contempt and sanctions was emailed to counsel for Abita Springs on November 10, 2023. Thus, in his representative capacity as chief executive officer of Abita Springs, Mayor Curtis was properly served. See La. R.S. 33:362(B) ("The mayor shall be the chief executive officer of the municipality."). See also Abita Springs Code of Ordinances, Sec. 2-202 ("[T]he mayor ... [is] the

_____

[7] Although Lonesome's motion to enforce and for contempt and sanctions was initially set for January 12, 2024, the trial court granted a continuance on Abita Springs' motion wherein it advised that counsel had a scheduling conflict in that it was his only grandson's first birthday on January 13, 2024 out of state; and that the Mayor of Abita Springs "had previously arranged months ago for a birthday celebration of 40 years out of state with his wife for which he was to leave on ... January 11, 2024." Over Lonesome's objection, the trial court granted the continuance.

chief executive officer of the town[.]"). As such, Mayor Curtis has not been denied due process under the federal or state constitution.[8]

**Mayor's Exception of Res Judicata**

During the pendency of this appeal, Mayor Curtis filed a peremptory exception raising the objection of res judicata. The gist of the mayor's assertion is that because he was dismissed from the lawsuit in the final and definitive judgment, see *Lonesome Dev., LLC*, 343 So.3d at 835 n.3, the claims against him in the motion for enforcement and for contempt and sanctions were extinguished.

La. R.S. 13:4231, which sets forth the general principles regarding res judicata, provides:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
>
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
>
> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
>
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

The chief inquiry is whether the second action asserts a cause of action that arises out of the transaction or occurrence that was the subject matter of the first action. The Louisiana Supreme Court has emphasized that all of the following elements must be satisfied in order for res judicata to preclude a second action: (1)

---

[8] Because we have found the Town was properly served and, therefore, the mayor in his representative capacity was served, and since the motion to enforce and for contempt and sanctions is based on enforcement of the final and definitive judgment entered solely against Abita Springs, we find it unnecessary to address whether Curtis was served in his individual capacity and pretermit such a discussion.

the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause(s) of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause(s) of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. *Slaughter v. Louisiana State Employees' Ret. Sys.*, 2023-1168 (La. App. 1st Cir. 10/11/24), --- So.3d ----, ----, 2024 WL 4471782, at *4.

The burden of proving the facts essential to support the objection of res judicata is on the party pleading the objection. If any doubt exists as to the application of res judicata, the objection must be overruled and the second lawsuit maintained. *Id.*

Mayor Curtis is unable to establish that the enforcement of the judgment and contempt relief Lonesome seeks in its motion existed at the time of the final and definitive judgment. The dismissal of the claims against Mayor Curtis in the final and definitive judgment did not include contempt relief because such relief arose subsequently when, in his representative capacity as chief executive officer of Abita Springs, he failed to satisfy the final and definitive judgment. Therefore, Mayor Curtis failed to meet his burden of proof, and his exception of res judicata is overruled.

**Contempt**

Abita Springs first contends that Lonesome failed to offer sufficient admissible evidence to establish entitlement to contempt relief. In so contending, Abita Springs challenges a letter offered into evidence by Lonesome as insufficient to establish the requisite showing needed to impose contempt relief.

A contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority. La. C.C.P. art. 221. In a civil contempt proceeding, the

court seeks to force a person into compliance with a court order. *Zaorski v. Usner*, 2022-1326 (La. App. 1st Cir. 10/31/23), 382 So.3d 959, 963, cert. denied, --- U.S. ----, --- S.Ct. ----, --- L.Ed. ----, 2024 WL 4426652 (2024).

A constructive civil contempt of court includes the willful disobedience of any lawful judgment, order, mandate, writ, or process of the court. La. C.C.P. art. 224(2). A finding that a person willfully disobeyed a court order in violation of Article 224(2) must be based on a finding that the person violated an order of the court intentionally, knowingly, and purposefully, without justifiable excuse. Proceedings for contempt must be strictly construed, and the policy of our law does not favor extending their scope. *Zaorski*, 382 So.3d at 964.

The burden of proving a violation of a court order intentionally, knowingly, and purposely without justiciable excuse is on the moving party. Additionally, the burden of proof in a civil contempt case is by a preponderance of the evidence. The trial court is vested with great discretion in determining whether a party should be held in contempt for disobeying a court order, and the trial court's decision should be reversed only when the appellate court discerns an abuse of that discretion. However, the trial court's predicate factual determinations are reviewed under the manifest error standard of review. *Id.*

It is undisputed that Abita Springs has failed to specifically perform the terms of the PUD Agreement insofar as providing the sewer connection and services to the Abita Meadows PUD as set forth in the agreement. In concluding that Abita Springs through its mayor intentionally, knowingly, and purposefully, without justifiable excuse, disobeyed the final and definitive judgment, the trial court expressly relied on a June 16, 2023 letter from the mayor to Lonesome as having set forth Abita Springs' intention to disobey the final and definitive judgment. The letter states in part:

11

[Abita Springs] officials believe it is unwise to proceed with work at the site at this time given the fact that both [Abita Springs] and [Lonesome] were operating under the mistaken belief that [Abita Springs] had the capacity to accept and process sewerage from Abita Meadows. [Lonesome] should evaluate alternative solutions for these problems before recommencing work at the Abita Meadows site.

To summarize, under these circumstances [Abita Springs] **officials believe it imprudent for [Lonesome] to proceed with further activity** at the Abita Meadows development site at this time. **Nevertheless, if [Lonesome] still chooses to proceed, it will be at the sole peril of [Lonesome]**. Further, please also note that [Abita Springs] formally objects but will take no action to stop such activity at this time, only because of the Court's current Orders and Judgments presently in effect. That said, [Abita Springs] reserves all rights to pursue all legal remedies available to [Abita Springs] at this time or in future, in furtherance of the health, safety and welfare of the citizens of [Abita Springs]. [Emphasis added.]

In apprising Abita Springs through its mayor that it was in contempt of court for its intentional, knowing, and purposeful disobedience of the final and definitive judgment without justiciable excuse, the trial court stated the following:

There are plenty of public policy reasons why the Court must enforce its lawful order despite [Abita Springs] being a governmental entity. The least of which would be that … no private entity would want to contract with a governmental entity if there could never be any recourse when a government decides to flippantly change its mind, after millions of dollars of private funds had been expended[,] because new officials have been elected.

[Abita Springs] has created an issue that [it] then refuse[s] to resolve. Then [it uses] that issue as … a basis to prevent development from proceeding forward. [It] instruct[s] [Lonesome] to fix what is [Abita Springs'] problem.

The letter from the mayor in June of 2023, after our last [status] conference [on June 5, 2023,] fully informs the Court of what [Abita Springs'] intention is and has been. Specifically … where Mayor Curtis advises Lonesome to, regardless of the fact that the Court has its orders in place, to not proceed with any further activity. And if [Lonesome] does choose to proceed, it will be at its sole peril. [Abita Springs] formally objects. And that it still reserves any and all rights to pursue any legal remedies to prevent development from moving forward. And I am paraphrasing.

[Abita Springs] is using circular logic to argue impossibility. [It], indeed, create[s] the impossibility. There was no mutual mistake…. [T]here is no impossibility of performance. There's … a lack of stomach to move forward with performing what must be done

12

to cure the problem. But it is not impossible. It's just that [Abita Springs] has decided it doesn't want to. There's a refusal of performance.

... [O]n top of that, there's a regret that [it] did not prevail at trial a year and a half ago. [Abita Springs] is looking for a second bite at the apple. There is simply no basis in law or fact for [Abita Springs] to have it.

Now [Abita Springs] come[s] in here, through counsel, [and] argue[s] that [Lonesome] wishes to flood neighboring citizens, and ... harm [Abita Springs]. [Abita Springs] fail[s] to remember that [Abita Springs], after multiple hearings, discussions, debates, and negotiations entered into this contract voluntarily with unanimous approval from all its aldermen, which at the time included the current mayor, and the mayor at the time, all agreed to, without objection, all signed off and agreed on this PUD ....

As was the case when I issued my order some time ago that is now final, [Abita Springs] is going to have to deal with the consequences of [its] actions. [It] must protect its citizens from the concerns that follow from it. And [it] must follow the law.

[Abita Springs] refuses to comply with an order of this Court. Frankly, it's making a mockery of the justice system.

A reasonable factual basis exists to support the trial court's conclusion that Abita Springs intentionally, knowingly, and purposely without justiciable excuse disobeyed the final and definitive judgment. The trial court's personal knowledge of the history of the case, including the events since the judgment became final in November of 2022, along with the contents of the June 23, 2023 letter, in which Abita Springs advises Lonesome that Abita Springs believes it is imprudent for the developer to proceed with further activity at the Abita Meadows PUD site and should Lonesome "still choose to proceed, it will be at the sole peril of [Lonesome]," constitutes a reasonable factual basis of intentional, knowing, and purposeful disobedience by Abita Springs of the order of specific performance in the final and definitive judgment.

Abita Springs next maintains the trial court erred in concluding it was without a justifiable excuse for its disobedience of the final and definitive

13

judgment on two bases. First, Abita Springs suggests its engineer's testimony (of alternative sewerage provisions to that set forth in the PUD Agreement) and its town clerk's testimony (of "shenanigans" between Lonesome and Abita Springs' mayor at the time the PUD Agreement was entered into which allowed for a mutual mistake as to sewerage capacity) were relevant and should have been allowed into evidence. Abita Springs also points to Article IX, §1 of the Louisiana Constitution to assert that compliance with the PUD Agreement as set forth in Section 2.1.1 would violate the public policy set forth therein.[9]

We find no error in the trial court's determination that Abita Springs lacked a justifiable excuse for disobeying the final and definitive judgment. Whether alternative sewerage provisions to that set forth in Section 2.1.1 of the PUD agreement exist; whether a mutual mistake occurred between the parties at the time they entered the PUD Agreement; or whether an order of specific performance against Abita Springs violated La. Const. Art. IX, §1, were issues that Abita Springs could have and should have been raised at the trial on the merits or on appeal of the final and definitive judgment. Because Abita Springs failed to put forth evidence to support, or to timely raise, its contentions relative to these issues, all of which arose out of the viability of the PUD Agreement, they have been extinguished and merged in the judgment. See La. R.S. 13:4231(1). Accordingly, the trial court committed no error of fact or law in concluding that Abita Springs violated the final and definitive judgment intentionally, knowingly, and purposefully, without justifiable excuse.

---

[9] La. Const. Art. IX, §1 states, "The natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. The legislature shall enact laws to implement this policy."

## Constitutional Contention

Citing Article XII, §10(C)[10] of the Louisiana Constitution, Abita Springs claims that the trial court lacked authority to order it to connect sewerage services to the Abita Meadows PUD as set forth in Section 2.1.1, suggesting this would have required an appropriation by Abita Springs to do so. Mindful that Lonesome does not seek compliance with the portion of the final and definitive judgment that ordered the payment of money damages from Abita Springs, we find that nothing precluded Abita Springs from challenging the constitutionality of Lonesome's requested order of specific performance at the time of the trial on the merits. Thus, the issue has been extinguished and merged in the final and definitive judgment. See La. R.S. 13:4231(1). The trial court correctly rejected this claim by Abita Springs.

## Propriety of Trial Court's Order of Imprisonment of Mayor

La. C.C.P. art. 226 provides, "When a contempt of court consists of the omission to perform an act which is yet in the power of the person charged with contempt to perform, he may be imprisoned until he performs it, and in such a case this shall be specified in the court's order." "There is little doubt that 'the fair and efficient administration of justice requires that respect for the dignity of the courts be maintained and that willful disobedience or deliberate defiance of the court's

---

[10] La. Const. art. XII, §10(C) states in part:

> [T]he legislature by law may limit or provide for the extent of liability of ... a political subdivision in all cases, including the circumstances giving rise to liability and the kinds and amounts of recoverable damages. It shall provide a procedure for suits against ... a political subdivision and provide for the effect of a judgment, but no public property or public funds shall be subject to seizure. The legislature may provide that such limitations, procedures, and effects of judgments shall be applicable to existing as well as future claims. No judgment against ... a political subdivision shall be exigible, payable, or paid except from funds appropriated therefor ... by the political subdivision against which the judgment is rendered.

Accord La. R.S. 13:5109(B)(2).

15

authority be punished.'" *State v. Bullock*, 576 So.2d 453, 458 (La. 1991), (quoting *In re Milkovich*, 493 So.2d 1186, 1199 (La. 1986)).

The punishment for contempt of court is provided in La. R.S. 13:4611(1). La. C.C.P. art. 227; *City of Baton Rouge v. Douglas*, 2016-0655 (La. App. 1st Cir. 4/12/17), 218 So.3d 158, 166. According to La. R.S. 13:4611(1)(c), district courts, like the trial court in this case, may punish a person adjudged guilty of a contempt of court therein for a deliberate refusal to perform an act which is yet within the power of the offender to perform by imprisonment until he performs the act.

Mayor Curtis urges that he lacks the power to comply with and render specific performance of the PUD Agreement and, therefore, cannot be imprisoned for contempt. But the judgment granting Lonesome's motion for contempt against Mayor Curtis did not order him to comply with the PUD Agreement. The trial court carefully fashioned its order by directing the mayor to *agree* to come into compliance with the final and definitive order of specific performance of the PUD Agreement. The trial court's judgment expressly included a purge clause, which permitted rescission of the order of incarceration "if Mayor Curtis comes into good faith compliance" with the final and definitive judgment, and articulated that good faith includes "a commitment and moving forward with his allowing the [PUD] Agreement to proceed as written," without specifying what actions are required for a showing of moving forward. The order of Mayor Curtis's imprisonment provided another option for rescission, i.e., if Abita Springs at its expense provides "an alternative for providing adequate capacity for sewerage based upon maximum utilization" as set forth in the PUD Agreement, which is agreeable to Lonesome.

Clearly, reading the two options together, a showing of moving forward includes an effort by the mayor to initiate an alternative agreeable to Lonesome at

16

Abita Springs' expense.[11] By complying with either or both of the options set forth by the trial court, Mayor Curtis as the chief executive officer of Abita Springs initiates the process of Abita Springs' compliance with the order of specific performance in the final and definitive judgment. Thus, the mayor's assertion that he lacks the power to comply is without merit, and the trial court did not abuse its discretion on this basis.[12]

The mayor additionally contends the trial court abused its discretion by imposing incarceration rather than less intrusive methods of enforcement. In accordance with its express terms, La. R.S. 13:4611(1)(c) permits imprisonment of Mayor Curtis until he agrees to come into compliance with the final and definitive order of specific performance of the PUD Agreement by showing his commitment and a moving forward.[13] Accordingly, the trial court did not err on this basis.[14]

---

[11] Whether Abita Springs has the fiscal ability to pay for such an expense and the enforcement of any money judgment Lonesome is able to obtain to enforce such an obligation are issues outside the ambit of this appeal.

[12] As to this issue, Mayor Curtis also filed a peremptory exception raising the objection of no cause of action in this court. An appellate court may consider a peremptory exception filed for the first time in this court, if pleaded prior to a submission of the case for decision, and if proof of the ground of the exception appears of record. La. C.C.P. art. 2163. However, consideration of such an exception is discretionary with the appellate court. Because we find no error in the trial court's conclusion on this issue, we decline to address the exception of no cause of action. See *Gutierrez v. Bruno*, 2019-1537 (La. App. 1st Cir. 8/5/20), 310 So.3d 560, 564 n.4.

[13] As noted in Lonesome's appellate brief, the remedies available to it for execution of money judgments are limited by the provisions of and jurisprudence interpreting La. Const. art. XII, §10(C). See *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 2001-0089 (La. App. 4th Cir. 3/27/02), 814 So.2d 648, 656, writ granted, 2002-1388 (La. 9/20/02), 825 So.2d 1153, and writ denied sub nom. *Vogt v. Bd. of Comm'rs, Orleans Levee Dist.*, 2002-1312 (La. 9/20/02), 825 So.2d 1169 (recognizing plaintiffs' plight in obtaining a judgment against a political subdivision but lacking constitutional or statutory authority to compel payment of a money judgment rendered against it).

[14] Because the mayor in his official capacity was correctly the subject of the trial court's judgment holding him in contempt, and considering that the motion to enforce and for contempt and sanctions is based on enforcement of the final and definitive judgment entered solely against Abita Springs, see n. 8, supra, we find it unnecessary to address Mayor Curtis's brief assertions in passing relative to having been held in contempt in his individual capacity and pretermit such a discussion.

## DECREE

For these reasons, the trial court's judgment, granting the motion for contempt filed by plaintiff-appellee, Lonesome Development, LLC, and ordering the incarceration of Mayor Curtis until he agrees to comply with the order of specific performance as set forth in the final and definitive judgment as set out in the appealed judgment, is affirmed. Mayor Curtis's peremptory exception of res judicata is overruled. Appeal costs in the amount of $4,372.84 are assessed against defendants-appellants, the Town of Abita Springs, Louisiana (Abita Springs) and its mayor, Dan Curtis.

**AFFIRMED. EXCEPTION OF RES JUDICATA OVERRULED.**